No. 23-10802

# In the United States Court of Appeals
# for the Fifth Circuit

KEN PAXTON, ATTORNEY GENERAL, STATE OF TEXAS; DAVID
SCHNITZ; TRACY MARTIN; FLOICE ALLEN,

*Plaintiffs-Appellants,*

*v.*

STEVEN DETTELBACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

## BRIEF FOR PLAINTIFFS-APPELLANTS

**COUNSEL LISTED ON INSIDE COVER**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General
 for Legal Strategy

CHARLES K. ELDRED
Chief, Legal Strategy Division
Charles.Eldred@oag.texas.gov

JOHNATHAN STONE
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Ken Paxton,
in his official capacity as
Attorney General of Texas

TONY K. MCDONALD
Tony@tonymcdonald.com

The Law Offices of Tony McDonald
1501 Leander Dr., Suite B2
Leander, Texas 78641
Tel.: (512) 200-3608
Fax: (815) 550-1292

WARREN V. NORRED
warren@norredlaw.com

Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
Tel.: (817) 704-3984
Fax: (817) 524-6686

Counsel for David Schnitz,
Tracy Martin, and Floice Allen

i

## CERTIFICATE OF INTERESTED PERSONS

No. 23-10802

*Ken Paxton, et al. v. Steven M Dettelbach, et al.,*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit, Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal (governmental parties not listed):

David Schnitz

Tracy Martin

Floice Allen

Tony K. McDonald
The Law Offices of Tony McDonald
1501 Leander Dr., Suite B2
Leander, Texas 78641

/s/ Tony K. McDonald
TONY K. MCDONALD
*Counsel for Plaintiffs-Appellants*
*David Schnitz, Tracy Martin, and Floice Allen*

## Statement Regarding Oral Argument

Before a Texan may make a firearm suppressor for non-commercial, personal use in Texas, the National Firearms Act of 1934 ("NFA"), as amended, requires him or her to apply for permission from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE") and pay a $200 tax (refunded if permission is denied). If permission is granted, the firearm suppressor still cannot be made unless it has a serial number, and the firearm suppressor is registered in a national database.

This case warrants oral argument because it raises issues of exceptional constitutional importance: Do Texans have standing to challenge the constitutionality of those statutory requirements before applying for permission and paying the tax, and does Texas also have standing to vindicate its quasi-sovereign interests in its citizens' health and safety? Oral argument will assist the Court in evaluating these questions.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................ii

Statement Regarding Oral Argument ......................................................iii

Table of Authorities .................................................................................vi

Introduction............................................................................................. 1

Statement of Jurisdiction ......................................................................... 2

Issues Presented ....................................................................................... 2

Statement of the Case .............................................................................. 3

    I.   The Individual Appellants wish to make firearm suppressors for non-commercial, personal use in Texas. Texas law directs Ken Paxton, Attorney General of Texas, to seek a judgment that such makings are exempt from federal regulation..............................................3

    II.  A Texas statute exempts firearm suppressors made in Texas and remaining in Texas from federal law and directs Ken Paxton, Attorney General of Texas, to seek a judgment that the statue is constitutional.............................................................................4

    III. Firearm Suppressors....................................................................4

    IV. Federal Law .................................................................................8

        A.  Federal law defines firearm suppressors as "firearms" and regulates them under the NFA.............................................8

        B.  The NFA prohibits Texans from making firearm suppressors for non-commercial, personal use in Texas without first applying for and receiving the approval of BATFE, paying a $200 tax, placing a serial number on the firearm suppressor, and registering the firearm suppressor. .............................................10

        C.  At least once, BATFE has arbitrarily failed to approve or disapprove hundreds of applications to make firearm suppressors. .....................................................................11

D.  The NFA lists prohibited acts and penalties for makers of firearm suppressors. It is unlawful for any person to............................ 13

V.  Procedural History ........................................................................ 14

Summary of the Argument................................................................... 16

Standard of Review .............................................................................. 17

Argument............................................................................................... 17

I.  The Individual Appellants Have Injury-In-Fact and Should not be Required to Violate or Comply with the Law in Order to  Bring this Preenforcement Challenge. ................................................. 17

II.  Texas Has Injury-in-Fact Because it as a Quasi-Sovereign Interest in the Health and Well-Being of its Residents and a Sovereign Interest in Creating and Enforcing a Legal Code. ..................................... 23

Conclusion............................................................................................. 26

Certificate of Service............................................................................. 27

Certificate of Compliance ..................................................................... 27

# Table of Authorities

## Cases

*Alfred L. Snapp & Son v. Puerto Rico,*
  458 U.S. 592 (1982) ..................................................................... 23, 24

*Babbitt v. United Farm Workers Nat. Union,*
  442 U.S. 289 (1979) ......................................................... 17, 19, 20, 22

*CIC Services, LLC v. Internal Revenue Serv.,*
  141 S. Ct. 1582 (2021) ....................................................................... 15

*Cox v. United States,*
  No. CR 11-00022, 2023 WL 4203261 (D. Alaska June 27, 2023) ...................... 21

*Enochs v. Williams Packing & Nav. Co.,*
  370 U.S. 1 (1962) ................................................................................. 15

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) ................................................................................. 20

*Kipke v. Moore,*
  No. CV GLR-23-1293, 2023 WL 6381503 (D. Md. Sep. 29, 2023) ................. 22

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................. 15

*Massachusetts v. E.P.A.,*
  549 U.S. 497 (2007) ..................................................................... 23, 24

*Massachusetts v. Mellon,*
  262 U.S. 447 [] (1923) .................................................................. 23, 24

*McAllen Grace Brethren Church v. Salazar,*
  764 F.3d 465 (5th Cir. 2014) ............................................................. 25

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................................. 20

*Nastri v. Dykes,*
  No. 3:23-CV-0056 (JBA), 2023 WL 4491621 (D. Conn. July 12, 2023) ........... 23

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw,*
  719 F.3d 338 (5th Cir. 2013) ............................................................. 22

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022) ............................................................... 1, 2, 22

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ............................................................................. 18

*Pennsylvania v. West Virginia*,
　　262 U.S. 553 (1923) ................................................................. 18

*Railway Mail Ass'n v. Corsi*,
　　326 U.S. 88 (1945) ................................................................... 18

*Rocky Mountain Gun Owners v. Polis*,
　　No. 23-CV-01077-PAB-NRN, 2023 WL 5333771 (D. Colo. Aug. 18, 2023) .....23

*State of Florida v. Mellon*,
　　273 U.S. 12 (1927) .................................................................. 25

*Steffel v. Thompson*,
　　415 U.S. 452 (1974) ................................................................. 18

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
　　37 F.4th 1078 (5th Cir. 2022) ................................................. 17

*Susan B. Anthony List v. Driehaus*,
　　573 U.S. 149 (2014) ............................................................ 18, 19

*Teter v. Lopez*,
　　76 F.4th 938 (9th Cir. 2023) ................................................... 22

*United States v. Bolatete*,
　　977 F.3d 1022, 1028 (11th Cir. 2020) ...................................... 6

*United States v. Cox*,
　　906 F.3d 1170 (10th Cir. 2018) .............................................. 19

*United States v. Rahimi*,
　　61 F.4th 443 (5th Cir. 2023) .................................................... 1

*United States v. Reimers*,
　　No. ACM 40141, 2023 WL 414923 (A.F. Ct. Crim. App. Jan. 26, 2023) ......... 21

*United States v. Syverson*,
　　90 F.3d 227 (7th Cir. 1996) ...................................................... 5

*United States v. Taylor*,
　　100 Fed. Appx. 305 (5th Cir. 2004) ........................................ 6

*Virginia v. Am. Booksellers Ass'n, Inc.*,
　　484 U.S. 383 (1988) ................................................................. 18

**Statutes**

18 U.S.C. § 921(a)(25) ...................................................................... 5

26 U.S.C. § 5821(a) .......................................................................... 10

26 U.S.C. § 5822 ............................................................................... 10

26 U.S.C. § 5841(a) .......................................................................... 11

26 U.S.C. § 5842(a) .......................................................................... 11

26 U.S.C. § 5845 ........................................................................................ 9

26 U.S.C. § 5845(a)(7) ............................................................................. 5

26 U.S.C. § 5845(i) ................................................................................. 10

26 U.S.C. § 5845(m) ............................................................................... 10

26 U.S.C. § 5848(a) ................................................................................ 13

26 U.S.C. § 5848(b) ................................................................................ 13

26 U.S.C. § 5861 .................................................................................... 13

26 U.S.C. § 5871 .................................................................................... 14

26 U.S.C. § 5872 .................................................................................... 14

26 U.S.C. § 7421 .................................................................................... 14

26 U.S.C. § 7801(a)(2)(A)(i) ................................................................... 9

28 U.S.C. § 1291 ...................................................................................... 2

28 U.S.C. § 599A ...................................................................................... 9

Tex. Gov't Code § 2.052(a) ...................................................................... 4

**Other Authorities**

ALICE CLINK SCHUMACHER, HIRAM PERCY MAXIM (1998) ....................................... 5

NICHOLAS J. JOHNSON, ET AL., FIREARMS LAW AND THE SECOND
    AMENDMENT: REGULATION, RIGHTS, AND POLICY (3rd ed. 2021) ........ 5, 7, 9, 11

Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and
    the Second Amendment*, 46 Cumb. L. Rev. 35 (2016) ................................. passim

**Regulations**

27 C.F.R. §§ 479.62–.64 .......................................................................... 10

**Constitutional Provisions**

U.S. CONST. amend. XIV § 1 ...................................................................... 3

# Introduction

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), "clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering prior precedent obsolete." *United States v. Rahimi*, 61 F.4th 443, 450–51 (5th Cir. 2023) (cleaned up, citation omitted). *Bruen* requires courts to re-evaluate Second Amendment jurisprudence. *Id*. at 448.

The National Firearms Act of 1934 ("NFA") was amended in 1968 to regulate (for the first time) the making of firearm suppressors for non-commercial, personal use in Texas. But Defendants cannot demonstrate any historical tradition that can be analogized to any feature of the NFA's regulatory regime that applies to the making of firearm suppressors for non-commercial, personal use in Texas. *Bruen*, 142 S. Ct. at 2126. Therefore, the statutes establishing that regulatory regime, and Defendants' rules and practices implementing and enforcing that regulatory regime, are unconstitutional. *See also Rahimi*, 61 F.4th at 460–61 (holding that "[t]he Government fails to demonstrate that 18 U.S.C. § 922(g)(8)'s restriction of the Second Amendment right fits within our Nation's historical tradition of firearm regulation…. As a result, § 922(g)(8) falls outside the class of firearm regulations countenanced by the Second Amendment.").

Moreover, BATFE has arbitrarily failed to approve or deny hundreds of applications to make firearm suppressors (instead requesting "additional information"), but has no legal authority to do so. When the government "put[s] [an application process] toward abusive ends" with "lengthy wait times," it violates the

Constitution. *Bruen*, 142 S. Ct. at 2138 n.9. BATFE runs the application process more like a may-issue regime similar to the one disapproved in *Bruen*.

The Texas Legislature directed the Attorney General of Texas to challenge federal regulation of the making of firearm suppressors for non-commercial, personal use in Texas. The Attorney General did so, along with three private plaintiffs. But the district court found that none of the plaintiffs suffered injury-in-fact.

The Court should reverse that ruling.

## Statement of Jurisdiction

The district court granted Appellees' motion for summary judgment and denied Appellants' motion for summary judgment on July 18, 2023. ROA.1001–08. Appellants timely filed their notice of appeal on August 4, 2023. ROA.1009–10. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Issues Presented

Appellants Schnitz, Martin, and Allen ("Individual Appellants") wish to make firearm suppressors for non-commercial, personal use. Use of a firearm suppressor will make them safer by empowering them to better defend their homes in the event of a home invasion. Appellant the State of Texas has adopted legislation exempting firearm suppressors made in Texas and remaining in Texas from federal laws regulating firearm suppressors. BATFE has publicly announced that Texas's statute is superseded by federal law and that Texans must continue to comply with federal law. The issues presented are:

1. Whether the Individual Appellants have standing to challenge the constitutionality of the NFA's relevant statutory requirements.

2. Whether Texas has standing to challenge the constitutionality of the NFA's relevant statutory requirements.

## STATEMENT OF THE CASE

**I.  The Individual Appellants wish to make firearm suppressors for non-commercial, personal use in Texas. Texas law directs Ken Paxton, Attorney General of Texas, to seek a judgment that such makings are exempt from federal regulation.**

The Individual Appellants reside in Texas and are citizens of Texas. ROA.711, 713, 715; U.S. CONST. amend. XIV § 1. They intend to make a firearm suppressor for their own non-commercial, personal use. ROA.711, 713, 715. The firearm suppressor will be made in their homes from basic materials without the inclusion of any part imported from another state other than a generic and insignificant part, such as a spring, screw, nut, or pin. *Id.* They intend to own the firearm suppressor in perpetuity, to never transport it outside the boundaries of the State of Texas, and to never transfer it to another person. *Id.* The intend to use the firearm suppressor with a personal firearm, exclusively for the purpose of self-defense. *Id.*

Use of a firearm suppressor will empower the Individual Appellants to better defend their houses in the event of a home invasion. *Id.* Use of a firearm suppressor will allow them to diminish the need to obtain and use hearing protection during a home invasion. *Id.* Use of a firearm suppressor in lieu of hearing protection will allow them the ability to react more quickly, to fully use their sense of hearing to evaluate

the danger, and to make proper decisions about their actions, including when to initiate and cease he use of lethal force. *Id.*

## II. A Texas statute exempts firearm suppressors made in Texas and remaining in Texas from federal law and directs Ken Paxton, Attorney General of Texas, to seek a judgment that the statue is constitutional.

In 2021, Texas adopted a statute declaring, "A firearm suppressor that is manufactured in this state and remains in this state is not subject to federal law or federal regulation, including registration." Tex. Gov't Code § 2.052(a). It also directed the Attorney General of Texas, upon written notification by a United States citizen who resides in Texas of the citizen's intent to make a firearm suppressor for non-commercial, personal use in Texas, to seek a judgment that § 2.052 is consistent with the United States constitution. The Individual Plaintiffs gave the Attorney General such notice. ROA.352–53.

On July 28, 2021, BATFE issued an "open letter" stating that "because [Chapter 2 of the Texas Government Code] directly conflicts with federal firearms laws and regulations, federal law supersedes [Chapter 2]. In summary, all provisions of the Gun Control Act (GCA) and the National Firearms Act (NFA), including their corresponding regulations, continue to apply to [federal firearms licensees] and other persons in Texas." ROA.717–18.

## III. Firearm Suppressors

Firearm suppressors were invented by Hiram Percy Maxim in the first decade of the 20th century. He also invented the car engine muffler and mufflers for loud factory equipment around the same time. Firearm suppressors and car engine

mufflers operate on similar principles. Loud noise results from hot gasses exiting the muzzle of a gun or the exhaust pipe of an automobile. Firearm suppressors and car engine mufflers cause the escaping hot gas to swirl and cool, lowering the volume of the noise. Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 35, 41–42 (2016) ("Halbrook"); Nicholas J. Johnson, et al., Firearms Law and the Second Amendment: Regulation, Rights, and Policy, 557–58 (3rd ed. 2021) ("Firearms Law and the Second Amendment"); Alice Clink Schumacher, Hiram Percy Maxim, 48-53 (1998).

"The terms 'firearm silencer' and 'firearm muffler' mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 26 U.S.C. § 5845(a)(7); 18 U.S.C. § 921(a)(25).

To "diminish[] the report of a portable firearm" means to make it quieter when fired. *See United States v. Syverson*, 90 F.3d 227, 229 (7th Cir. 1996) (discussing defendant's use of a "cylinder" that "could be used to reduce the report of a pistol from 151 decibels to 144.5"). "[T]he term 'silencer' is a misnomer, in that—despite movie fantasies—a noise suppressor reduces decibels, but does not actually 'silence'

the discharge of a firearm. Noise may be muffled or diminished, and maybe only by a few decibels at that, but it can still be heard." Halbrook, *supra*, at 36.[1]

Firearm suppressors are widely accepted and very infrequently used in criminal activity. As Ronald Turk, former second in command of BATFE (the agency responsible for enforcing federal law regulating firearm suppressors) stated in 2017:

> In the past several years, opinions about silencers have changed across the United States. Their use to reduce noise at shooting ranges and applications within the sporting and hunting industry are now well recognized. At present, 42 states generally allow silencers to be used for sporting purposes....
>
> While DOJ and ATF have historically not supported removal of items from the NFA [National Firearms Act], the change in public acceptance of silencers arguably indicates that the reason for their inclusion in the NFA is archaic and historical reluctance to removing them from the NFA should be reevaluated. ATF's experience with the criminal use of silencers also supports reassessing their inclusion in the NFA. On average in the past 10 years, ATF has only recommended 44 defendants a year for prosecution on silencer-related violations; of those, only approximately 6 of the defendants had prior felony convictions. Moreover, consistent with this low number of prosecution referrals, silencers are very rarely used in criminal shootings. Given the lack of criminality associated with silencers, it is reasonable to conclude that they should not

---

[1] "Firearm silencers" or "firearm mufflers" are also commonly known as "firearm suppressors," or simply "suppressors," "silencers," or "mufflers." *See United States v. Bolatete*, 977 F.3d 1022, 1028 (11th Cir. 2020) (referring to "suppressors or silencers (which are the same thing)"); *United States v. Taylor*, 100 Fed. Appx. 305, 307 (5th Cir. 2004) (irrelevant subsequent history omitted) ("Taylor admitted that he had tried to make silencers with the help of a book entitled 'How to Build Practical Firearms Suppressors: an Illustrated Step-by-Step Guide.'"). Appellants will use the term "firearm suppressor" in this Brief and intend that term to have the same meaning as "suppressor," "firearm silencer," "silencer," "firearm muffler," and "muffler."

be viewed as a threat to public safety necessitating NFA classification, and should be considered for reclassification under the GCA [Gun Control Act, which does not regulate the making of firearm suppressors].

ROA.692–93

The National Hearing Conservation Association ("NHCA") Task Force on the Prevention of Noise-Induced Hearing Loss from Firearm Noise recommends the use of firearm suppressors to reduce the risk of acquiring noise-induced hearing loss.[2] The CDC agrees, stating: "The only potentially effective noise control method to reduce … noise exposure from gunfire is through the use of noise suppressors that can be attached to the end of the gun barrel."[3] In addition to reducing noise, firearm suppressors also reduce recoil, allowing shooters better control over their weapon and leading to improved accuracy and better shot placement.

There are over 2.6 million firearm suppressors registered in the United States, including over 500,000 registered in Texas. BATFE, Firearms Commerce in the United States, Annual Statistical Update 2021, at 16. They are legal to possess in 42 states, including Texas. FIREARMS LAW AND THE SECOND AMENDMENT, *supra*, at 600.

---

[2] Michael Stewart et al., NHCA Position Statement Recreational Firearm Noise, March 16, 2017, available at https://www.hearingconservation.org/assets/docs/NHCA_position_paper_on_firea.pdf.

[3] Lilia Chen & Scott E. Brueck, Center for Disease Control and Prevention National Institute for Occupational Safety and Health, Noise and Lead Exposures at an Outdoor Firing Range—California (2011), available at: https://americansuppressorassociation.com/wp_asa/wp-content/uploads/2017/01/CDC-Study-California-Firing-Ranges.pdf (accessed October 31, 2023).

In short, firearm suppressors are in common use and are neither dangerous nor unusual.

## IV. Federal Law

As one scholar has written, "Devices to reduce noise at its source are ubiquitous in modern society. But imagine if you had to register with the government, obtain permission of law enforcement, submit fingerprints, and pay a $200 tax in order to have a muffler on your automobile or lawn mower. You have to do exactly that to obtain a device to muffle the noise from your firearm, and if you fail to do so, you can be imprisoned for ten years." Halbrook, *supra*, at 35 (footnotes omitted).

### A. Federal law defines firearm suppressors as "firearms" and regulates them under the NFA.

The NFA has regulated the commercial importation and manufacture for sale or disposition of firearm suppressors since 1934.[4] In 1968, those regulations were extended for the first time to making firearm suppressors for non-commercial, personal use.[5] Since then, it has been illegal to make a firearm suppressor for non-commercial, personal use without first requesting permission, and, if granted, paying a $200 tax, registering the firearm suppressor, and marking the firearm suppressor with a serial number.

---

[4] 48 Stat. 1236 (1934) (commonly known as the "National Firearms Acts of 1934" or the "NFA," as originally enacted).

[5] 82 Stat. 226 (1968), Title II (amending the National Firearms Act of 1934). Title I of 82 Stat. 226 is commonly known as the "Gun Control Act of 1968" or "GCA."

"While the National Firearms Act of 1934 is based on Congress's tax power and only covered [a] small fraction of the American gun supply [including firearm suppressors], the Gun Control Act of 1968 applies to all firearms manufactured after 1898 and is based on the interstate commerce power." FIREARMS LAW AND THE SECOND AMENDMENT, *supra*, at 660.

The NFA defines "firearms" as including, generally, short-barreled shotguns, short-barreled rifles, machine guns, "destructive devices" (such as explosives, artillery, and missiles), and firearm suppressors. 26 U.S.C. § 5845(a).

Firearms regulated by the NFA are regulated more strictly than firearms regulated by the GCA. As BATFE acknowledges, the GCA does not regulate making firearms (including firearm suppressors) for non-commercial, personal use at all, but "the making of an NFA firearm [i.e. firearms covered by the NFA] requires a tax payment and advance approval by ATF."[6] "By being defined as a 'firearm' in the NFA, a [firearm] suppressor is subject to the same strict requirements involving registration, taxation, and approval by the government that apply to machines guns and artillery." Halbrook, *supra*, at 39. The NFA requirements are detailed below.

Although the NFA is a tax statute located in the Internal Revenue Code, its reference to "the Secretary" means the Attorney General. 26 U.S.C. § 7801(a)(2)(A)(i). BATFE, part of the Department of Justice, enforces the NFA. 28 U.S.C. § 599A.

---

[6]    https://www.atf.gov/firearms/qa/does-individual-need-license-make-firearm-personal-use (last accessed October 31, 2023).

**B.  The NFA prohibits Texans from making firearm suppressors for non-commercial, personal use in Texas without first applying for and receiving the approval of BATFE, paying a $200 tax, placing a serial number on the firearm suppressor, and registering the firearm suppressor.**

Under the NFA, "[t]he term 'make', and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a [firearm suppressor]." 26 U.S.C. § 5845(i); *Compare id.*, *with id.* § 5845(m) ("The term "manufacturer" means any person who is engaged in the business of manufacturing [firearm suppressors].).)." Thus, under federal law, a person "makes" a firearm suppressor if it is intended for non-commercial, personal use, but "manufactures" a firearm suppressor if it is intended for sale. The Individual Appellants thus want to "make" firearm suppressors.

No one may make a firearm suppressor without with applying for permission to do so. 26 U.S.C. § 5822. Federal regulations establish the "Form 1" application form and the information require to be submitted. 27 C.F.R. §§ 479.62–.64. A copy of Form 1 is at ROA.942–54. BATFE reports that current (last updated October 1, 2023) Form 1 average processing times are 60 days for paper submissions and 55 days for efiled submissions.[7]

The tax on making firearms suppressors and other "firearms" regulated under the National Firearms Act of 1934 is $200. 26 U.S.C. § 5821(a). In 1934, the $200

---

[7] Current Processing Times, BATFE, atf.gov/resource-center/current-processing-times (last visited Oct. 31, 2023).

amount "was decided because that was the average cost of a machine gun, and a 100% tax would thereby be imposed." Halbrook, *supra*, at 50; FIREARMS LAW AND THE SECOND AMENDMENT, *supra*, at 571. Before the enactment of the Firearms Act of 1934, a firearm suppressor cost about five dollars. Halbrook, *supra*, at 50. The amount of the tax—$200—has not changed since 1934. FIREARMS LAW AND THE SECOND AMENDMENT, *supra*, at 578.

When BATFE approves an application, it simultaneously registers the firearm suppressor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841(a).

Once BATFE approves an application, the firearm suppressor must have a serial number. 26 U.S.C. § 5842(a).

### C. At least once, BATFE has arbitrarily failed to approve or disapprove hundreds of applications to make firearm suppressors.

Plaintiffs filed this lawsuit on February 24, 2022. Appellees admit that on February 28, 2022, BATFE denied approximately 845 applications to make firearms suppressors. ROA.578.

Defendants admit that BATFE sent a letter to approximately 1,901 email addresses associated with pending Form 1 applications on March 3, 2022, stating:

Dear eForm applicant:

The National Firearms Act (NFA) Division received your ATF eForm 1, Application to Make and Register a Firearm. As part of the application process, NFA Division must confirm that the making or possession of a firearm would not place the applicant in violation of the law [footnote omitted].

NFA Division requests that you provide certain additional information so that it may determine whether your eForm 1 application to make a silencer may

11

lawfully be approved. Specifically, please submit to NFA Division the following:

- Pictures of the parts that you will use to make the silencer (the pictures should be clear and allow identification of the parts photographed);

- A description of the process you will use to assemble or fabricate the silencer;

- The product, model or kit name, if any, of each device and/or part that you will use to make the silencer; and

- The source from which the parts were obtained, i.e. the name of the store, website, etc.

… Without the additional descriptive information, NFA Division will be unable to determined whether the eForm 1 application to make a silencer may lawfully be approved. Therefore, failure to submit the requested information by March 25, 2022 will result in your application being disapproved and your $200 making tax refunded [emphasis in original].

ROA.324, 578. No statute, regulation, or instruction on the Form 1 requires that applicants provide this "additional information."

18 U.S.C. § 921(a)(25) defines "any part intended only for use in" "assembling or fabricating a [firearm suppressor]" as a firearm suppressor. BATFE's March 3, 2022, email required applicants to submit "[p]ictures of the parts that [they] will use to make the silencer (the pictures should be clear and allow identification of the parts photographed)." But under § 921(a)(25), those parts are themselves firearm suppressors that the applicant cannot possess until BATFE has granted permission. As noted, persons possessing firearm suppressor parts without BATFE's permission are subject to ten years in prison. Incredibly, by requiring applicants to provide this "additional information," BATFE required that applicants incriminate themselves by disclosing possession of parts without BATFE's prior permission.

By statute, BATFE cannot use this information "directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration," 26 U.S.C. § 5848(a), but can use this information "in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information," *id.* § 5848(b). But nothing prohibits BATFE from using this information to deny the application—from which there is no appeal.

### D.  The NFA lists prohibited acts and penalties for makers of firearm suppressors. It is unlawful for any person to

- "possess a [firearm suppressor] made in violation of the provisions of this chapter;"

- "possess a [firearm suppressor] which is not registered to him in the National Firearms Registration and Transfer Record;"

- "make a [firearm suppressor] in violation of the provisions of this chapter;" or

- "possess a [firearm suppressor] which is not identified by a serial number as required by this chapter."

26 U.S.C. § 5861(c), (d), (f), (i).

The penalties for any of the above violations are a fine of up to $250,000,[8] imprisonment for not more than ten years, or both. 26 U.S.C. § 5871. And "[a]ny [firearm suppressor] involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture." 26 U.S.C. § 5872.

Thus, a person who makes or possesses a firearm suppressor in Texas for non-commercial, personal use in Texas without first obtaining BATFE's advance permission, without paying the $200 tax, without registering it, or without engraving a unique serial number on the suppressor faces ten years imprisonment, a fine of not more than $10,000, or both.

## V. Procedural History

Appellants filed suit on February 24, 2022, in the U.S. District Court for the Northern District of Texas. ROA.1–67. The current live pleading is Plaintiffs' Second Amended Complaint. ROA.315–395.

Appellants' complaint alleged that, with respect to the making of firearm suppressors in Texas for non-commercial, personal use in Texas, the NFA's four requirements—application, tax, registration, and serial number—violate the Second Amendment, and that the taxation of a constitutional right is unconstitutional. ROA.344–49. They also alleged that the Anti-Injunction Act, 26 U.S.C. § 7421, does not bar this case because, *first*, it does not apply at all to the application, registration,

---

[8] https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-15/download#:~:text=The%20criminal%20provisions%20of%20the,the%20case%20of%20an%20organization (citing 18 U.S.C. § 3571(b), (c)).

and serial number requirements because those do not concern the assessment or collection of tax, *see CIC Services, LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582 (2021), and, *second*, the *Enochs* exception applies, *see Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 9 (1962) ("[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the [AIA] is inapplicable and the attempted collection may be enjoined if equity jurisdiction otherwise exists."). *Id.*

The district court concluded that Appellants lack standing, noting that "the Parties only contest whether Plaintiffs have suffered an injury in fact." ROA.1003. The Court did not consider the other two *Lujan* factors.[9]

The district court found that the Individual Plaintiffs "have adduced no evidence that they, in fact, possess any illegal silencers—or otherwise attempted any prohibited conduct. Nor have they shown that they have been threatened with prosecution or that it is likely." ROA.1004–05. Consequently, the court held, "Individual Plaintiffs' fear of prosecution is 'imaginary or speculative' at best—and insufficient for Article III standing." ROA.1005.

---

[9] Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up, citations omitted).

The Court also stated:

> Individual Plaintiffs have not attempted to apply to make and register a silencer. And assuming that they are correct about the unconstitutional nature of the requirements, it is immaterial whether an application is ultimately approved or denied. Either an application is wrongfully denied, and a plaintiff is injured because the government has deprived them of a silencer, or an application is approved, and a plaintiff is injured by being subjected to the process and tax. But Individual Plaintiffs' intent—by itself—to make a silencer in violation of these requirements fails to establish that they have been concretely injured by the process they seek to challenge.

*Id.*

The Court denied Texas's standing, holding that Texas is "seeking to sue the federal government as *parens patriae* on behalf of its residents to vindicate their personal Second Amendment rights." ROA.1007.

Appellants timely appealed. ROA.1009–10.

## Summary of the Argument

The Individual Appellants have injury-in-fact because they wish to make a firearm suppressor for non-commercial, personal use in Texas without complying with the NFA's unconstitutional application, tax, serial-number, and registration provisions, but face a credible threat of prosecution if they do so.

The State of Texas has injury-in-fact to its quasi-sovereign interests in the health and safety of its citizens because firearm suppressors assist citizens in the defense of their homes against criminal invasion, and injury-in-fact to its sovereign interest in creating and enforcing a legal code.

## STANDARD OF REVIEW

This court "review[s] summary judgments de novo, applying the same standards as the district court," and "review[s] de novo the district court's rulings on standing." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022).

## ARGUMENT

## I.   The Individual Appellants Have Injury-In-Fact and Should not be Required to Violate or Comply with the Law in Order to Bring this Preenforcement Challenge.

The district court acknowledged that Allen, Martin, and Schintz wish to make silencers at home without the restrictions imposed by the NFA and would do so but for the NFA's harsh criminal penalties. ROA.1002. But the court held that they did not have standing to challenge the NFA's restrictions because they did not "possess an illegal, non-registered silencer nor" had "attempted to complete the application to make one or paid the tax." *Id.* In other words, the district court held that the Individual Plaintiffs could not challenge the NFA requirements unless they broke the law or had already been targeted for potential prosecution. Because the Constitution does not put plaintiffs to such a zero-sum choice, the district court erred.

To establish standing under Article III, the Individual Plaintiffs must "allege[] a case or controversy within the meaning of Article III of the Constitution." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979). "The basic inquiry is whether the 'conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, nor hypothetical or abstract." *Id.* at 298 (quoting *Railway Mail Ass'n v. Corsi*, 326

U.S. 88, 93 (1945)). In addition, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923). Article III allows for "preenforcement review" of allegedly unconstitutional criminal statutes so long as the plaintiffs "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

For preenforcement review of a criminal prohibition, "it is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Article III does not require a plaintiff to expose himself to a criminal sentence to bring a constitutional challenge. Rather, the plaintiff need only "allege 'an *intention* to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (emphasis added). Plaintiffs may establish a "credible threat of prosecution" if they suffer "fears of state prosecution that are not imaginary or speculative," *Babbitt*, 442 U.S. at 298, and are "actual and well-founded [enough to establish] that the statute will be enforced against them," *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

Under those precedents, Individual Plaintiffs have met their burden for establishing Article III standing. They demonstrated their intent to engage in the prohibited conduct. *See Susan B. Anthony List*, 573 U.S. at 159. In a signed declaration, the Individual Plaintiffs admitted that they intended to manufacture a firearm suppressor for home self-defense and as hearing protection. ROA.711, 713, 715. In addition, Plaintiffs provided numerous examples of individuals who have run afoul of the NFA rules and been prosecuted for making their own silencers, demonstrating that their "fears of state prosecution … are not imaginary or speculative," *Babbitt*, 442 U.S. at 298. In fact, at least one citizen has been convicted of making silencers that state law declared legal. *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018).[10] And BATFE has already announced that it will continue to enforce federal law despite the Texas statute. On July 28, 2021, it issued an "open letter" stating that "because [Chapter 2 of the Texas Government Code] directly conflicts with federal firearms laws and regulations, federal law supersedes [Chapter 2]. In summary, all provisions of the Gun Control Act (GCA) and the National Firearms Act (NFA), including their corresponding regulations, continue to apply to [federal firearms licensees] and other persons in Texas." ROA.717–18.

The district court erred in two ways in holding that the Individual Appellants failed to demonstrate standing. *First*, the court improperly increased the Individual Appellants' burden to show their intent to engage in the prohibited conduct. The

---

[10] Roxana Hegeman, Kansas man's homemade gun silencers clash with federal law, KSL Salt Lake City (Nov. 21, 2021), http:// https://www.ksl.com/article/42298980/kansas-mans-homemade-gun-silencers-clash-with-federal-law.

district court noted that such plaintiffs "do not need to expose themselves to actual arrest or prosecution before they may challenge the law." ROA.1004. (quoting *Babbitt*, 442 U.S. at 298). But, it held, the Individual Appellants fell short of establishing standing to challenge the NFA requirements because they did not "possess any illegal silencers" and they had not "attempted any prohibited conduct." *Id.* The district court even noted that they had not filled out any applications. *Id.*

In other words, the district court felt that the Individual Appellants needed to violate the NFA rules before they had standing to challenge them, by either illegally possessing the firearm silencers or filling in an application that (as noted before) calls for applicants to admit to possessing prohibited items for making silencers. That is a misstatement of the law. "[W]here threatened action by government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007). The Individual Appellants took all the steps they could *short of* exposing themselves to criminal liability by indicating their intent to make firearm suppressors for personal use without fulfilling the tax, application, engraving, or registration requirements in the NFA. Plaintiffs attacking the constitutionality of a prohibitive statute *pre*-enforcement need do no more to establish standing. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010).

The district court explained its reasoning by noting that Individual Appellants' mere "desire to do something the government has prosecuted in the past" does not suffice, because "our doctrines of criminal law forbid convicting persons for mere thoughts, desires, or motives." ROA.1005. But that analysis applies the wrong legal

concepts to the wrong question. Whether an individual can be held *criminally liable* for his thoughts is one issue; whether an individual who seeks judicial review before committing an act ostensibly prohibited by an unconstitutional law is another. While Individual Plaintiffs cannot be held criminally liable for their intent to make firearm silencers, when raising a pre-enforcement challenge, they need not be.

*Second*, the court misapplied the standard for establishing that a prosecution was likely in a preenforcement challenge. The court agreed with Individual Appellants that "the government has a history of prosecuting the illegal possession of unregistered silencers." *Id.*; *see*, *e.g.*, *Cox v. United States*, No. CR 11-00022, 2023 WL 4203261 (D. Alaska June 27, 2023); *United States v. Reimers*, No. ACM 40141, 2023 WL 414923 (A.F. Ct. Crim. App. Jan. 26, 2023), review denied, 83 M.J. 313 (C.A.A.F. 2023).[11] But it held that Individual Plaintiffs had not "shown that they

---

[11] As cited by Appellants, ROA.743, many more examples can be found through a simple internet search. Some examples:

- *Holdrege man sentenced to 30 months imprisonment for unlawful possession of a silencer*, KHGI Nebraska TV (Feb. 3, 2020), https://nebraska.tv/news/local/holdrege-man-sentenced-to-30-months-imprisonment-for-unlawful-possession-of-a-silencer.
- *Falls City woman gets probation for selling unregistered silencer on Facebook*, News Channel Nebraska (Aug. 6, 2022), http://rivercountry.newschannelnebraska.com/story/47044716/falls-city-woman-gets-probation-for-selling-unregistered-silencer-on-facebook.
- Press Release, *Jacksonville Man Charged With Illegal Possession Of A Silencer,* BATFE (Dec. 4, 2017), https://www.justice.gov/usao-mdfl/pr/jacksonville-man-charged-illegal-possession-silencer.

have been threatened with prosecution or that it is likely." ROA.1004–05. And while the district court acknowledged that the federal government has not been shy about prosecuting individuals for violating the NFA firearm suppressor laws in the past, it required the Individual Plaintiffs to have been directly "threatened with prosecution." *Id.* at 5. While the court asserts that a showing that prosecution is "likely" would suffice, it does not explain how the Individual Plaintiffs could reach such a standard, since they have already proved that the federal government is ready and willing to prosecute them if they carry out their intent to make firearm suppressors.

Even before *Bruen*, the Fifth Circuit found preenforcement standing to assert a Second Amendment claim in *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) ("When asking a federal court to engage in pre-enforcement review of a criminal statute, a plaintiff need not violate the statute; he may meet this injury requirement by showing 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and … a credible threat of prosecution thereunder.'" (citing *Babbitt*, 442 U.S. at 298). This year, other courts have similarly found pre-enforcement standing to challenge statutes implicating Second Amendment rights in cases similar to this one. *Teter v. Lopez*, 76 F.4th 938, 944 (9th Cir. 2023); *Kipke v. Moore*, No. CV GLR-23-1293, 2023 WL 6381503, at *12 (D. Md. Sep. 29, 2023); *Rocky Mountain Gun Owners v. Polis*, No. 23-

---

- Press Release, *Ordering Silencers Delivers Federal Prison Sentence*, BATFE (Sept. 10, 2021), http://justice.gov/usao-co/pr/ordering-silencers-delivers-federal-prison-sentence.

CV-01077-PAB-NRN, 2023 WL 5333771, at *2 (D. Colo. Aug. 18, 2023); *Nastri v. Dykes*, No. 3:23-CV-0056 (JBA), 2023 WL 4491621, at *5 (D. Conn. July 12, 2023).

The Individual Plaintiffs have standing.

## II. Texas Has Injury-in-Fact Because it as a Quasi-Sovereign Interest in the Health and Well-Being of its Residents and a Sovereign Interest in Creating and Enforcing a Legal Code.

"[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607 (1982).

The unconstitutional regulation of firearm suppressors adversely affects Texans' health and well-being by delaying (by 60 or 55 days when the application is approved) or prohibiting (when the application is not approved) Texans' ability to use firearm suppressors for the purpose of home defense, as demonstrated by the affidavits of the Individual Plaintiffs. ROA. 711–16. Therefore, Texas has standing to vindicate its quasi-sovereign interests in its citizens' health and well-being.

Precedent establishes that Texas's assertion of standing to assert its quasi-sovereign interests is different than an assertion of *parens patriae* standing against the federal government on its citizens' behalf. In the very case that started the revolution in state government versus federal government lawsuits, the Supreme Court specifically rejected the argument that states cannot assert quasi-sovereign interests against the federal government. *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 n.17 (2007) ("Drawing on *Massachusetts v. Mellon*, 262 U.S. 447 [] (1923) and [*Alfred L. Snapp*] the CHIEF JUSTICE claims that we 'overloo[k] the fact that our cases cast

significant doubt on a State's standing to assert a quasi-sovereign interest … against the Federal Government.' Not so. *Mellon* itself disavowed any such broad reading when it noted that the Court had been 'called upon to adjudicate, not rights of person or property, not rights of dominion over physical domain, [and] *not quasi-sovereign rights actually invaded or threatened.*' [262 U.S. at 484–485] (emphasis added)." (citations omitted)).

Texas's quasi-sovereign interests in the health and safety of its citizens exist independently of the statute directing the Attorney General to file this lawsuit. The statute does not manufacture a lawsuit. Instead, it sets out the State's policy in favor of the use of firearms suppressors and directs the Attorney General to vindicate Texas's independently existing quasi-sovereign interests in promoting that policy in federal court.

"[T]here is a critical difference between allowing a State to protect her citizens from the operation of federal statutes (which is what [*Massachusetts v. Mellon*, 262 U.S. 447 (1923)] prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Massachusetts v. E.P.A.*, 549 U.S. at 520 n.17 (internal quotation marks omitted). Texas has standing to assert its right to vindicate its quasi-sovereign interests in the health and well-being of its citizens.

Texas also has standing to vindicate its sovereign interest in "the power to create and enforce a legal code." *Alfred L. Snapp*, 458 U.S. at 601. This is a different interest than the interest in "protect[ing] her citizens from the operation of federal statutes," which does not give Texas standing.

Section 2.052 of the Texas Government Code is part of Texas's legal code. Texas alleges that the challenged provisions of the NFA are unconstitutional with respect to the making of firearm suppressors for non-commercial, personal use in Texas. But BATFE has already declared Texas's statute preempted by federal law. ROA.717–18. Thus, Texas has standing to vindicate its sovereign interest in enacting Section 2.052. *See State of Florida v. Mellon*, 273 U.S. 12, 17 (1927) (recognizing that Florida lacks standing to challenge a constitutional federal statute, but entertaining (and rejecting) Florida's argument that the statute was unconstitutional, as if Florida had standing to make that argument).

* * *

"It is well settled that once [courts] determine that at least one plaintiff has standing, [courts] need not consider whether the remaining plaintiffs have standing to maintain the suit." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).

At least one party has injury-in-fact, and the district court did not consider the other two *Lujan* factors, so this Court should reverse the district court's holding that no party has standing.

## Conclusion

The Court should reverse the district court's ruling that Appellants lack injury-in-fact and should remand this case to that court for a ruling on the other two *Lujan* factors and the merits of Appellants' constitutional claims.

<table>
<tr><td>

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Grant Dorfman
Deputy First Assistant Attorney General

Ralph Molina
Deputy Attorney General
  for Legal Strategy

*/s/ Charles K. Eldred*
Charles K. Eldred
Chief, Legal Strategy Division
Charles.Eldred@oag.texas.gov

Johnathan Stone
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Ken Paxton,
in his official capacity as
Attorney General of Texas

</td><td>

*/s/ Tony K. McDonald*
Tony K. McDonald
Tony@tonymcdonald.com

The Law Offices of Tony McDonald
1501 Leander Dr., Suite B2
Leander, Texas 78641
Tel.: (512) 200-3608
Fax: (815) 550-1292

Warren V. Norred
warren@norrelaw.com

Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
Tel.: (817) 704-3984
Fax: (817) 524-6686

Counsel for David Schnitz,
Tracy Martin, and Floice Allen

</td></tr>
</table>

## CERTIFICATE OF SERVICE

On October 31, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/ Charles K. Eldred*
CHARLES K. ELDRED

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,824 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

*/s/ Charles K. Eldred*
CHARLES K. ELDRED