No. 23-10802

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

Ken Paxton, Attorney General, State of Texas;
David Schnitz; Tracy Martin; Floice Allen,

Plaintiffs-Appellants,

v.

Steven Dettelbach, in his Official Capacity as Director, Bureau of Alcohol, Tobacco, Firearms and Explosives; Merrick Garland, U.S. Attorney General,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Northern District of Texas

_____

## BRIEF FOR APPELLEES

_____

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MICHAEL S. RAAB
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe that oral argument is necessary in this case.

Nevertheless, if the Court believes that oral argument would be of assistance, the

government stands ready to present argument.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE.......................................................................2

     A.    Legal Background ...................................................................2

     B.    Factual and Procedural Background ...............................5

SUMMARY OF ARGUMENT......................................................................7

STANDARD OF REVIEW .........................................................................10

ARGUMENT ..............................................................................................10

I.    The District Court Correctly Held that No Plaintiff Has Established Standing......................................................................................10

     A.    The Individual Plaintiffs Lack Any Injury-in-Fact ....................11

     B.    The Attorney General of Texas Lacks Any Injury-in-Fact ......17

II.    Plaintiffs' Claims Are Barred by the Tax Anti-Injunction Act ..........22

     A.    Plaintiffs' Challenge to the NFA's Integrated Taxing Scheme Is Barred by the Tax Anti-Injunction Act ......................................22

     B.    Plaintiffs Cannot Establish that Their Claims Should Nevertheless Proceed ...............................................................27

CONCLUSION ..........................................................................................34

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Alfred L. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ............................................................... 18, 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 15

*Bezet v. United States,*
    276 F. Supp. 3d 576 (E.D. La.), *aff'd,*
        714 F. App'x 336 (5th Cir. 2017) .......................................... 3
    714 F. App'x 336 (5th Cir. 2017) ......................................... 15, 25

*Bob Jones Univ. v. Simon,*
    416 U.S. 725 (1974) ................................................................. 23, 24

*CIC Servs., LLC v. IRS,*
    593 U.S. 209 (2021) ................................................................. 24, 26

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................... 7, 11

*Consolidated Edison Co. of N.Y. v. NLRB,*
    305 U.S. 197 (1938) ...................................................................... 21

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ...................................................................... 32

*Elrod v. Burns,*
    427 U.S. 347 (1976) ...................................................................... 30

*Enochs v. Williams Packing & Navigation Co.,*
    370 U.S. 1 (1962) ....................................................... 9, 27, 28, 29

*Flora v. United States,*
    357 U.S. 63 (1958) ........................................................................ 23

*Georgia v. Pennsylvania R.R. Co.,*
    324 U.S. 439 (1945) ...................................................................... 18

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ....................................................... 30

*Haaland v. Brackeen,*
  599 U.S. 255 (2023) ........................................................................ 7, 19, 21

*Hotze v. Burwell,*
  784 F.3d 984 (5th Cir. 2015) ...................................................... 23, 24, 25

*Kemlon Prods. & Dev. Co. v. United States,*
  638 F.2d 1315 (5th Cir.), *modified on other grounds,*
  646 F.3d 223 (5th Cir. 1981) .............................................................. 27, 31

*Linn v. Chivatero,*
  714 F.2d 1278 (5th Cir. 1983) ........................................................ 9, 23, 25

*Louisiana ex rel. Louisiana Dep't of Wildlife & Fisheries v.*
  *National Oceanic & Atmospheric Admin.,*
  70 F.4th 872 (5th Cir. 2023) ...................................................................... 20

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..................................................................................... 10

*Maine v. Taylor,*
  477 U.S. 131 (1986) ..................................................................................... 21

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ........................................................ 18, 19, 20, 21, 22

*Mississippi State Democratic Party v. Barbour,*
  529 F.3d 538 (5th Cir. 2008) .............................................................. 7, 8, 14

*Naquin v. Elevating Boats, L.L.C.,*
  817 F.3d 235 (5th Cir. 2016) ...................................................................... 10

*NFIB v. Sebelius,*
  567 U.S. 519 (2012) ..................................................................................... 23

*Sonzinsky v. United States,*
  300 U.S. 506 (1937) ..................................................................................... 25

*Staples v. United States,*
  511 U.S. 600 (1994) ..................................................................................... 32

*Steffel v. Thompson,*
  415 U.S. 452 (1974) ..................................................................................... 12

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ..................................................................................... 11

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................ 11

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ............................................................ 10

*United States v. Al-Azhari,*
  No. 8:20-cr-206, 2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ............... 33

*United States v. American Friends Serv. Comm.,*
  419 U.S. 7 (1974) ............................................................ 30

*United States v. Clintwood Elkhorn Mining Co.,*
  553 U.S. 1 (2008) ............................................................ 23

*United States v. Cox,*
  906 F.3d 1170 (10th Cir. 2018) ........................................ 24-25, 32

*United States v. Freed,*
  401 U.S. 601 (1971) .......................................................... 3

*United States v. Gresham,*
  118 F.3d 258 (5th Cir. 1997) .............................................. 3, 25

*United States v. Hasson,*
  No. 19-96, 2019 WL 4573424 (D. Md. Sept. 20, 2019) ....................... 33

*United States v. McCartney,*
  357 F. App'x 73 (9th Cir. 2009) ............................................ 32

*United States v. Richardson,*
  418 U.S. 166 (1974) ......................................................... 22

*United States v. Ross,*
  458 F.2d 1144 (5th Cir. 1972) .............................................. 25

*United States v. Royce,*
  No. 1:22-CR-130, 2023 WL 2163677 (D.N.D. Feb. 22, 2023) .................. 33

*United States v. Saleem,*
  No. 3:21-cr-00086, 2023 WL 2334417 (W.D.N.C. Mar. 2, 2023) ............. 32-33

*United States v. Stepp-Zafft,*
  733 F. App'x 327 (8th Cir. 2018) (per curiam) ............................. 32

*United States v. Texas,*
  599 U.S. 670 (2023) ............................................................................... 19, 20

*United States v. Thompson/Ctr. Arms Co.,*
  504 U.S. 505 (1992) ....................................................................................... 2

*United States v. Villalobos,*
  No. 3:19-cr-00040, 2023 WL 3044770 (D. Id. Apr. 21, 2023) ................... 32

*Virginia ex rel. Cuccinelli v. Sebelius,*
  656 F.3d 253 (4th Cir. 2011) .................................................................. 20, 22

*Westfall v. Miller,*
  77 F.3d 868 (5th Cir. 1996) ....................................................................... 8, 15

*Westmoreland Coal Co., In re,*
  968 F.3d 526 (5th Cir. 2020) ........................................................................ 1

*Zimmerman v. City of Austin,*
  881 F.3d 378 (5th Cir. 2018) ....................................................................... 12

**U.S. Constitution:**

Amend. II ............................................................................................................ 32

**Statutes:**

National Firearms Act of 1934 (NFA):
  26 U.S.C. § 5801 *et seq.* ............................................................................... 2
    26 U.S.C. § 5801 ...................................................................................... 3
    26 U.S.C. § 5811 ...................................................................................... 3
    26 U.S.C. §§ 5811-5812 ........................................................................... 4
    26 U.S.C. § 5821 ...................................................................................... 3
    26 U.S.C. § 5822 ................................................................................ 3, 13
    26 U.S.C. § 5841(b) ................................................................................. 4
    26 U.S.C. § 5842(a) ................................................................................. 4
    26 U.S.C. § 5845(a) ................................................................................. 2
    26 U.S.C. § 5848(a) ............................................................................... 16

18 U.S.C. § 921(a)(25) .................................................................................... 2

26 U.S.C. § 6511 ................................................................................. 4, 12, 24

26 U.S.C. § 6532(a)(1) .............................................................. 4, 24

26 U.S.C. § 7421(a) ............................................................ 1, 2, 9, 22

26 U.S.C. § 7422 ............................................................... 4, 12, 24

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1346(a)(2) .................................................................. 1

28 U.S.C. § 2201(a) .................................................................... 23

Tex. Gov't Code § 2.052(a) ............................................................ 4

Tex. Gov't Code § 2.054 ............................................................... 4

**Regulation:**

27 C.F.R. § 479.64 ...................................................................... 4

**Legislative Materials:**

H.R. Rep. No. 83-1337 (1954) ..................................................... 2, 32

S. Rep. No. 90-1501 (1968)............................................................2

**Other Authorities:**

ATF, *Current Processing Times*, https://perma.cc/98FA-AX5L
    (last updated Nov. 1, 2023) .....................................................29

ATF, Form 1 (5320.1), *Application to Make and Register a Firearm*
    (Dec. 2022), https://perma.cc/E9QF-MDDF ................................. 16

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1346(a)(2). ROA.321. As explained below, the district court lacked jurisdiction over plaintiffs' claims because plaintiffs do not have standing to sue and because plaintiffs' claims are barred by the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a). *See infra* pp. 10-33; *see also In re Westmoreland Coal Co.*, 968 F.3d 526, 533 (5th Cir. 2020) (holding that the Tax Anti-Injunction Act "divests courts of subject-matter jurisdiction" when it applies). The district court granted summary judgment, entered final judgment, and dismissed the case for lack of jurisdiction on July 18, 2023. ROA.1007-08. Plaintiffs filed a timely notice of appeal on August 4, 2023. ROA.1009. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The National Firearms Act (NFA) taxes and regulates the making of certain dangerous weapons, including firearm silencers. An individual who wishes to make a regulated weapon must pay a $200 tax, receive approval from the Attorney General, and register and serialize the silencer. Plaintiffs in this case are three individuals who have stated that they wish to make a silencer subject to the NFA, as well as the Attorney General of Texas. Plaintiffs claim that the NFA's requirements violate the Second Amendment as applied to silencers made by individuals for noncommercial purposes. The district court granted summary judgment in the government's favor and dismissed this suit for lack of standing. The court concluded that the individual

plaintiffs had not established a sufficient impending injury to bring their claims and

that the Attorney General of Texas could not bring *parens patriae* claims against the

federal government on behalf of Texas citizens. The issues presented are:

1. Whether the district court correctly concluded that plaintiffs lacked standing

to sue; and

2. Whether plaintiffs' attempts to enjoin the NFA's taxation-and-registration

scheme are barred by the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

## STATEMENT OF THE CASE

### A.     Legal Background

**1.** The National Firearms Act of 1934, 26 U.S.C. § 5801 *et seq.*, taxes and

regulates firearms that can "be used readily and efficiently by criminals or gangsters,"

H.R. Rep. No. 83-1337, at A395 (1954). These firearms include both "weapons of

war" like "antitank guns" and "machineguns," S. Rep. No. 90-1501, at 28 (1968), as

well as "concealable weapon[s]," *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505,

517 (1992) (plurality opinion), such as short-barreled shotguns and, as relevant here,

"any silencer," 26 U.S.C. § 5845(a). A "silencer" is "any device for silencing, muffling,

or diminishing the report of a portable firearm, including any combination of

parts . . . intended for use in assembling or fabricating a firearm silencer or firearm

muffler, and any part intended only for use in such assembly or fabrication." 18

U.S.C. § 921(a)(25).

For those firearms, the NFA establishes a taxation-and-registration scheme "in the interest of the public safety." *United States v. Freed*, 401 U.S. 601, 609 (1971). This scheme tracks "the flow of [NFA] firearms" to ensure they stay away from criminal, dangerous, or irresponsible individuals. *Bezet v. United States*, 276 F. Supp. 3d 576, 612 (E.D. La.), *aff'd*, 714 F. App'x 336 (5th Cir. 2017). The central pillar of the NFA is a tax that the statute levies on the production and transfer of covered firearms. Thus, importers, manufacturers, and dealers in covered firearms, including silencers, must pay an annual special occupational tax of $1000 or $500. *See* 26 U.S.C. § 5801. In addition, individuals who are not engaged in a firearms business but who wish to make an NFA-regulated firearm, including a silencer, must pay a $200 tax per firearm made. *See id.* § 5821. Finally, any entity or individual who wishes to transfer an NFA firearm is required to pay a $200 tax for each firearm transferred. *See id.* § 5811.

In addition, "[i]n order to facilitate enforcement" of the NFA's tax, the statute imposes registration and identification requirements. *United States v. Gresham*, 118 F.3d 258, 261 (5th Cir. 1997). As particularly relevant here, an individual who wishes to make a covered firearm, including a silencer, is required to file a written application with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). 26 U.S.C. § 5822. That application must include identifying information about "the firearm to be made" as well as identifying information, including fingerprints and a photograph, about the maker. *Id.* Once the application is filed and the tax is paid, ATF may approve the application. *See id.* "Upon receipt of the approved application, the maker

is authorized to make the firearm described therein." 27 C.F.R. § 479.64. In addition, the maker is required to register each firearm he makes in the National Firearms Registration and Transfer Record, 26 U.S.C. § 5841(b), and to mark each firearm with a serial number and the name of the maker, *id.* § 5842(a). Similar requirements also attach to the transfer of any firearm. *See id.* §§ 5811-5812.

Finally, if the maker of a firearm wishes to challenge the assessment of the NFA's tax against him, the Internal Revenue Code provides a mechanism to do so. After paying the tax, the maker may file a claim for a refund or credit with the Attorney General. *See* 26 U.S.C. § 6511. If the maker is dissatisfied with the result of that administrative process (or if six months elapse without a determination on his claim), he may bring suit in district court in a civil action for a refund of the tax. *See id.* §§ 6532(a)(1), 7422.

**2.** In 2021, Texas enacted a statute that declares that any firearm silencer that "is manufactured in [Texas] and remains in [Texas] is not subject to federal law or federal regulation, including registration, under the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052(a). In addition, the statute provides that, upon written notification by any United States citizen who resides in Texas that the citizen "inten[ds] to manufacture" a silencer covered by the statute, the Attorney General of Texas "shall seek a declaratory judgment from a federal district court in this state that [the statute] is consistent with the United States Constitution." *Id.* § 2.054.

4

**B.      Factual and Procedural Background**

**1.** Plaintiffs are three private individuals and the Attorney General of Texas in his official capacity. *See* ROA.319-20. According to their complaint, the three private individuals "intend to personally manufacture," using "basic materials without the inclusion of any part imported from another state other than a generic and insignificant part," a "firearm suppressor for their own non-commercial, personal use." ROA.326. The individual plaintiffs have each notified the Texas Attorney General of this intent pursuant to the state law provisions described above. ROA.326.

In their operative complaint, plaintiffs claimed that the NFA's bundle of regulatory requirements described above—that is, the statute's application, approval, taxation, registration, and serialization requirements—violate the Second Amendment as applied to silencers made by private individuals for non-commercial use. *See* ROA.344-48. As relief, they requested that the district court permanently enjoin the federal government from enforcing those regulatory requirements throughout Texas as applied to non-commercial making of silencers and that the court permanently enjoin the federal government from prosecuting the individual plaintiffs for violating those requirements. *See* ROA.349.

**2.** The district court granted summary judgment for the government, concluding that neither the individual plaintiffs nor the Texas Attorney General demonstrated standing to sue. *See* ROA.1001-07.

First, the district court addressed the individual plaintiffs' standing. The court explained that, to establish standing, a plaintiff who seeks to bring "a pre-enforcement challenge to a criminal statute must demonstrate a realistic danger of sustaining a direct injury" from the statute's enforcement. ROA.1004 (quotation omitted). Otherwise, the plaintiff is unable to show the requisite "certainly impending" or "imminent" injury-in-fact. ROA.1004. And here, the court explained, the individual plaintiffs "have adduced no evidence that they, in fact, possess any illegal silencers— or otherwise [have] attempted any prohibited conduct." ROA.1004. Nor have the plaintiffs demonstrated "that they have been threatened with prosecution or that it is likely"—indeed, none of the individual plaintiffs had even "attempted to apply to make and register a silencer." ROA.1004-05. Therefore, the court concluded, the plaintiffs' claimed injury was "imaginary or speculative at best—and insufficient for Article III standing." ROA.1005 (quotation omitted).

Second, the district court addressed the Texas Attorney General's standing. As the court explained, the Attorney General did not allege that Texas "has any concrete or imminent injury specific to the state or its administration." ROA.1006. Instead, Texas asserted that it had standing "to defend its quasi-sovereign interest" in "protecting its residents' ability to make silencers free of federal regulation." ROA.1005-06 (quotation omitted). But, the court explained, that asserted interest is insufficient in this case, because Supreme Court precedent makes clear that a State may not bring such a *parens patriae* suit "on behalf of its citizens at large" against the

6

federal government. ROA.1006 (citing *Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023)). And although Texas disclaimed the *parens patriae* label, the district court explained that substantively Texas sought to sue the federal government "on behalf of its residents to vindicate their personal Second Amendment rights"—a core *parens patriae* claim barred in this context. ROA.1007.

Thus, the district court entered a final judgment dismissing the action without prejudice for lack of jurisdiction. ROA.1008. This appeal followed.

## SUMMARY OF ARGUMENT

**I.** As the district court correctly held, neither the individual plaintiffs nor the Attorney General of Texas has established a sufficient injury-in-fact from the NFA's requirements to enable them to have standing to bring this suit.

**A.** The individual plaintiffs do not allege that they have presently been injured by the NFA's requirements. Instead, they rest their claim to standing on their assertion that they wish to make silencers and so will be injured by the NFA's requirements in the future. But plaintiffs' assertions fail to establish the requisite "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis and quotation omitted).

Plaintiffs have not submitted any evidence to substantiate their asserted plans to make silencers. Although each submitted the same boilerplate declaration asserting that intent, "standing is not created by a declaration in court pleadings." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). Instead, a plaintiff

must provide "concrete plans" or "objective evidence" of a "firm intention" to engage in the relevant conduct. *Id.* at 545-46. Here, plaintiffs fail to adduce any additional evidence demonstrating concrete plans to make silencers. They do not, for example, show that they have taken any steps in pursuit of their asserted plans, such as procuring necessary materials or identifying particular silencer designs that they wish to make. Indeed, no plaintiff has even submitted an application to make a silencer under the NFA, even though this Court has previously held that, in the NFA context, "completion of the statutory procedure" is "necessary to establish" the plaintiff's injury. *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996).

**B.** Nor can the Attorney General of Texas, acting on the State's behalf, establish any injury-in-fact stemming from the challenged provisions of the NFA. In an attempt to do so, Texas primarily asserts that the NFA injures its interests in protecting its citizens' health and safety. But the Supreme Court has repeatedly and recently made clear that States cannot bring such *parens patriae* claims on behalf of their citizens against the federal government. And Texas' various attempts to plead around the *parens patriae* label cannot change the substance of its claims as prohibited claims on behalf of its citizens. Nor can Texas manufacture standing where none exists simply by passing a state statute memorializing its view that the NFA is unconstitutional as applied here.

**II.A.** Even if plaintiffs could establish standing, their claims would be barred by the Tax Anti-Injunction Act, which generally prohibits suits "for the purpose of

restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). The NFA

establishes a tax on the making of silencers, and plaintiffs explicitly seek to enjoin the

assessment of that tax as applied to them. And plaintiffs' additional claims challenging

the rest of the NFA's integrated scheme similarly seek inappropriate pre-enforcement

relief against "activities which are intended to or may culminate in the assessment or

collection of taxes." *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (quotation

omitted). Thus, plaintiffs may properly challenge the NFA only by paying the tax and

suing for refund.

**B.** In district court, plaintiffs argued that their claims are subject to a judicially

created exception to the Tax Anti-Injunction Act that permits claims to proceed

where the plaintiff can demonstrate irreparable injury and where the government

could not prevail in the suit under any circumstances. *See Enochs v. Williams Packing &*

*Navigation Co.*, 370 U.S. 1 (1962). But neither prong of the *Enochs* test is satisfied here.

Plaintiffs cannot demonstrate any irreparable injury, because they may properly pay

the NFA's tax and bring their claims in a refund suit. And although plaintiffs claim

that the NFA's process imposes various minimal costs and delay, the ordinary

burdens that attend payment and processing of a tax do not constitute irreparable

injury sufficient to satisfy *Enochs*. And in any event, every court of which the

government is aware has held that silencers are not protected by the Second

Amendment, either because they are not bearable arms, because they are dangerous

and unusual weapons, or for both reasons.

9

## STANDARD OF REVIEW

This Court "review[s] the district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party." *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016).

## ARGUMENT

### I.  The District Court Correctly Held that No Plaintiff Has Established Standing

"The law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (quotation omitted). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes" and "do not exercise general legal oversight of the Legislative and Executive Branches." *Id.* at 423-24. Instead, to establish standing, a plaintiff must prove (1) that she has "suffered an injury in fact"; (2) that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations and quotation omitted). In this case, plaintiffs' claims to standing fail at the first prong of the analysis: no plaintiff has established any concrete injury-in-fact.

## A.    The Individual Plaintiffs Lack Any Injury-in-Fact

No individual plaintiff alleges that he has submitted an application to make an NFA-regulated silencer and, thus, no plaintiff claims to have already suffered an injury from the NFA's requirements. Instead, the individual plaintiffs attempt to demonstrate the required injury-in-fact by arguing (at 17-23) that they "wish to make silencers at home without the restrictions imposed by the NFA and would do so but for the NFA's harsh criminal penalties." As the district court correctly concluded, *see* ROA.1004-05, that claimed future injury does not satisfy Article III.

**1.** To establish the requisite injury-in-fact, "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration, emphasis, and quotation omitted). Instead, "to ensure that the alleged injury is not too speculative," a plaintiff who wishes to rely on threatened injury to establish standing must demonstrate that a concrete injury is "certainly impending." *Id.* (emphasis and quotation omitted). In this context, a "vague desire" to violate the challenged statute does not suffice. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Instead, the injury-in-fact standard requires plaintiffs to allege an actual "intention to engage in a course of conduct . . . proscribed by [the] statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation omitted).

That requirement that plaintiffs demonstrate more than a vague desire to engage in proscribed conduct is particularly important in the NFA context. The underpinning of the pre-enforcement standing doctrine is that "it is not necessary"

for a party to "expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). But, as explained, the NFA does not in fact prohibit the underlying conduct—here, the making of silencers. Thus, "the decision to for[]go" taking steps under the statute to demonstrate a concrete intent to violate the statute could not "be excused on the ground that" it would "expose[] [plaintiffs] to possible prosecution." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

Conversely, requiring individuals to take such concrete steps before bringing suit does not preclude effective review of the NFA's requirements. As explained, an individual who has his application to make a firearm approved may then pursue a claim—first administratively and then in district court—for a refund of the making tax. *See* 26 U.S.C. §§ 6511, 7422. And an individual who has his application denied (or who has six months pass without a determination on his application) will then have exhausted his options to comply and may have standing to bring a suit challenging the requirements. Either way, the individual will be able to receive effective judicial review of his claims without ever having exposed himself to arrest or prosecution. *See* ROA.1005 ("Either an application is wrongfully denied, and a plaintiff is injured because the government has deprived them of a silencer, or an application is approved, and a plaintiff is injured by being subjected to the process and tax.").

12

Moreover, the NFA process itself may reveal additional information relevant to any challenge that a prospective plaintiff wishes to bring. The NFA requires that an application to make a firearm "shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." 26 U.S.C. § 5822. To effectuate that requirement, the application process requires an applicant to provide identifying information about himself and about the firearm. *Id.* And in evaluating the application, ATF not only reviews the information about the firearm but also contacts the National Instant Criminal Background Check System—the "FBI's system that checks records on persons who may be disqualified from receiving firearms"—and "confirm[s] that state law does not otherwise forbid possession of the NFA weapon that the applicant seeks to make." ROA.841-42.

Thus, the NFA process may reveal additional information bearing on whether a particular plaintiff may properly challenge the NFA's requirements. For example, it may reveal that the particular firearm that a plaintiff seeks to make is independently prohibited by federal or state law, or it might reveal that a plaintiff is himself independently prohibited from possessing firearms. If an NFA application is denied on these grounds, that denial may establish that the plaintiff has not been injured by the NFA but instead has been injured by the independent prohibition and must properly challenge that prohibition rather than the NFA. And even if the NFA application is approved, that process may reveal additional details about the specific

13

Case: 23-10802    Document: 32    Page: 22    Date Filed: 01/02/2024

nature of the firearm that the plaintiff wishes to make that could, for example, be relevant to the underlying merits of the plaintiff's substantive challenge.

**2.** Plaintiffs' attempt to demonstrate the requisite "certainly impending" injury fails because they have not established facts substantiated with evidence demonstrating their imminent intent to make a silencer. To meet their burden, the three individual plaintiffs have relied entirely on three materially identical declarations, in which each plaintiff avers that he or she "intend[s] to manufacture a firearm suppressor" made "from basic materials." ROA.711; ROA.713; ROA.715. But "standing is not created by a declaration in court pleadings." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). Instead, a plaintiff must demonstrate—with "concrete plans" or other "objective evidence"—at least a "serious interest" in violating the challenged provision. *Id.* at 546 (quotation omitted). And where the record shows, for example, that a plaintiff "has taken no steps" in pursuit of that intention or has not "pursued to completion its attempt to" have the conduct authorized if necessary, *see id.* at 545, the plaintiff cannot substantiate the requisite concrete intent.

Plaintiffs' declarations fail to surmount this hurdle. Plaintiffs have not submitted evidence demonstrating that they have taken any steps in pursuit of their stated intent. They have, for example, submitted no evidence demonstrating that they have procured any of the tools and unregulated components that they intend to use to make their silencers. Nor have they pursued at all—much less to completion—any

14

attempt to receive authorization to make silencers: as the district court emphasized and as plaintiffs appear to admit, *see* ROA.1004-05; Br. 20, they have not submitted any NFA application to make a silencer.

That failure is particularly troubling in the context of the NFA; indeed, this Court has twice held that the failure to complete the NFA's application process is itself sufficient to undermine any claim of standing to challenge the NFA's requirements. *See Westfall v. Miller*, 77 F.3d 868, 869-72 (5th Cir. 1996) (holding that the plaintiff "lack[ed] standing to bring the instant action," because he had "made no effort to obtain certifications" required to complete his NFA application to transfer a machinegun); *Bezet v. United States*, 714 F. App'x 336, 338, 340 (5th Cir. 2017). And the Court has imposed that requirement even while recognizing that it might be "cumbersome, frustrating, and inconvenient" to exhaust the NFA's processes. *Westfall*, 77 F.3d. at 872.

Even beyond the failure to take any actual steps to pursue making a silencer, plaintiffs' "naked assertion[]" that they intend to make silencers is "devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). For example, plaintiffs have not identified the specific type of silencer that they allegedly intend to make. Similarly, plaintiffs do not even describe the specific sources from which they intend to procure any components or tools that they do not already possess.

Moreover, although plaintiffs suggest that they have established the requisite intent because they "took all the steps they could short of exposing themselves to criminal liability," Br. 20, that suggestion is both incorrect and irrelevant. It is incorrect because, as explained, plaintiffs could have taken substantial additional concrete steps evidencing their intent to make silencers. And it is irrelevant, because, as also explained, even short of taking such steps, plaintiffs could have submitted substantial additional facts demonstrating the concreteness of their intent. Instead of submitting any such facts, plaintiffs have simply rested on their naked assertion of intent.

And to the extent that plaintiffs' suggestion hinges on their view that the application "calls for applicants to admit to possessing prohibited items for making silencers," Br. 20, that view is incorrect. As an initial matter, as plaintiffs acknowledge (at 13), the federal government is not permitted to use any "information or evidence obtained from an application" submitted "to comply with any provision" of the NFA, "directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration." 26 U.S.C. § 5848(a). And regardless, ATF's application to make a firearm simply requires an applicant to describe the firearm that he intends to make; it does not require him to have already acquired each of the components he intends to use. *See* ATF, Form 1 (5320.1), *Application to Make and Register a Firearm* (Dec. 2022), https://perma.cc/E9QF-MDDF. Of course, if any component that the

applicant intends to use in making a silencer would itself be regulated as a silencer, then the applicant should not acquire or construct that component until his application has been approved.[1]

### B.    The Attorney General of Texas Lacks Any Injury-in-Fact

As the district court also correctly held, *see* ROA.1006-07, the Attorney General of Texas has similarly failed to establish any injury in fact that could give rise to standing. In attempting to establish such an injury, the Attorney General has not alleged that the challenged provisions of the NFA regulate Texas itself in an unconstitutional way. Instead, the Attorney General has claimed that the NFA's silencer regulations injure Texas by undermining the State's "quasi-sovereign interests in its citizens' health and well-being," Br. 23-24, and its "sovereign interest in enacting" Section 2.052, the state statute purporting to shield its citizens' making of silencers from the NFA, Br. 24-25. Neither of those claimed interests is availing.

**1.** At the outset, Texas' asserted quasi-sovereign interest in protecting its citizens from the NFA's regulations cannot support its standing to sue the federal government. As the Supreme Court has made clear, a State may not sue the federal

---

[1] Although plaintiffs complain (at 11-13) that ATF sent a letter to other applicants in March 2022 that requested photographs of the components that the applicants intended to use to make their silencers, that complaint does not advance their case. Plaintiffs do not allege that they intend to acquire components that are themselves silencers before receiving approval. In any event, as explained, any information that plaintiffs submitted as part of the application process could not be used to prosecute them.

government "to protect her citizens from the operation of federal statutes." *Massachusetts v. EPA*, 549 U.S. 497, 520 n. 17 (2007) (quotation omitted). That is because "the United States, not [a] State, represents [its] citizens as *parens patriae* in their relations to the federal government." *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 446 (1945). Thus, a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982).

Indeed, Texas appears to recognize this limit. *See* Br. 23. It claims, however, that this suit does not involve an improper assertion of "standing against the federal government on its citizens' behalf" but rather an assertion of Texas' own "quasi-sovereign interests in its citizens' health and well-being." Br. 23-24. But that attempted distinction is inconsistent with *Snapp*. There, the Court held that a State "must" assert a quasi-sovereign injury to have *parens patriae* standing in the first place, *Snapp*, 458 U.S. at 601, and then clarified that *even then* it cannot sue the federal government, *id.* at 610 n.16. Thus, the identification of a quasi-sovereign interest is a prerequisite to, not an alternative to, asserting *parens patriae* standing.

Regardless, Texas cannot avoid the limits on *parens patriae* standing simply by disclaiming the label: a suit to protect "its citizens' health and well-being" is indeed a suit "on its citizens' behalf." As the district court explained, in substance, this suit reflects Texas' attempt to sue the federal government "on behalf of its residents to vindicate their personal Second Amendment rights"—a core *parens patriae* claim barred

18

in this context. ROA.1007. Indeed, the Supreme Court has recently rejected a similar attempt by Texas to recast a suit brought on behalf of its citizens in non-*parens patriae* terms, explaining that States may not properly pursue such a "thinly veiled attempt to circumvent the limits on *parens patriae* standing." *Haaland v. Brackeen*, 599 U.S. 255, 295 n.11 (2023). Although *Brackeen* makes clear the error in Texas' reasoning—and was cited by the district court in rejecting Texas' attempt at artful pleading, ROA.1006— Texas does not cite or attempt to distinguish that case in its opening brief.

Finally, Texas' reliance (at 23-24) on *Massachusetts v. EPA*, 549 U.S. 497, is misplaced. As Texas recognizes, that case makes clear that a State may not sue the United States "to protect her citizens from the operation of federal statutes." Br. 24 (quoting *Massachusetts*, 549 U.S. at 520 n.17). But that is exactly what Texas is attempting to do in this suit: it seeks an injunction protecting its citizens against enforcement of the NFA.

Moreover, although *Massachusetts* holds that a State has standing "to assert its rights under federal law," 549 U.S. at 520 n.17, Texas has not here asserted its rights under federal law. It has not, for example, pointed to any cognizable substantive right analogous to the one identified in *Massachusetts*: a "well-founded desire to preserve its sovereign territory." *Id.* at 519. Nor has it pointed to any cognizable procedural right analogous to the right implicated in *Massachusetts*, where the State was "challeng[ing] … the denial of a statutorily authorized petition for rulemaking," *United States v. Texas*, 599 U.S. 670, 685 n.6 (2023). Thus, as in *Texas*, the *Massachusetts*

19

standing analysis "does not control." *Id.* And even assuming the "special solicitude"

described in *Massachusetts*, 549 U.S. at 520, remains relevant despite the Supreme

Court's omission of that concept in recent decisions, *see Texas*, 599 U.S. at 688-89

(Gorsuch, J., concurring in the judgment), it "merely changes the normal standards

for redressability and immediacy" and "does not absolve States from substantiating a

cognizable injury," *Louisiana ex rel. Louisiana Dep't of Wildlife & Fisheries v. National

Oceanic & Atmospheric Admin.*, 70 F.4th 872, 882 (5th Cir. 2023) (quotation omitted).

    **2.** Texas' attempt to rely on Section 2.052 to generate a "sovereign interest" in

enforcing its legal code fares no better. Texas' enactment of a statute declaring the

unenforceability of federal law does not transform the substantive nature of the

interests it seeks to validate. The fact remains that the underlying regulation that Texas

complains about is the regulation of its citizens' making of firearm silencers—not any

regulation of Texas itself—and it is only those citizens who may properly assert their

interest in not being regulated. Texas' statute codifies its litigation position that the

federal government cannot constitutionally regulate such conduct, but it does not alter

the true nature of the interests being asserted. A State does not "acquire some special

stake in the relationship between its citizens and the federal government merely by

memorializing its litigation position in a statute." *Virginia ex rel. Cuccinelli v. Sebelius*, 656

F.3d 253, 271-72 (4th Cir. 2011) (rejecting a similar attempt by Virginia to circumvent

the limits of *parens patriae* standing by enacting a state statute declaring the State's

opposition to the challenged federal law).

In some circumstances, a State has a sovereign interest in "the continued enforceability of its own statutes." *Maine v. Taylor*, 477 U.S. 131, 137 (1986); *see Snapp*, 458 U.S. at 601. But that interest is not implicated in this case, because the challenged NFA restrictions do not affect any cognizable enforcement interest that Texas possesses. Texas' statute does not itself reflect the State's own attempt to regulate in this area; instead, the statue does no more than purport to exempt Texas residents from federal law. "It is manifest that the enactment of [a] state law could not override the constitutional authority of the Federal Government." *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 223 (1938); *see id.* ("The State could not add to or detract from that authority.").

Texas thus has no valid sovereign interest in purporting to interfere with the federal government's enforcement of federal law with respect to Texas citizens. And although Texas claims an interest in "enforc[ing] a legal code," Br. 24 (quoting *Snapp*, 458 U.S. at 601), it fails to recognize that the United States is not among the entities that it has a valid interest in regulating. Accordingly, a conflict exists between state and federal law in this case only to the extent that Texas seeks to "protect her citizens from the operation of" the federal statute. *Massachusetts*, 549 U.S. at 520 n.17 (quotation omitted). That, the Supreme Court has held, is exactly "what [its precedent] prohibits." *Id.* And, again, no amount of artful pleading can properly allow Texas to "circumvent the limits on *parens patriae* standing." *Brackeen*, 599 U.S. at 295 n.11.

Finally, the incorrectness of Texas' theory is underscored by its breadth. Texas' theory of standing would permit a State to manufacture standing for itself to challenge *any* federal policy or statute simply by enacting a state statute declaring its opposition to that federal policy or law. For example, a State "could enact a statute codifying its constitutional objection to the CIA's financial reporting practices and proceed to litigate the sort of 'generalized grievance[]' about federal administration that the Supreme Court has long held to be 'committed to the . . . political process.'" *Virginia ex rel. Cuccinelli*, 656 F.3d at 271-72 (alterations in original) (quoting *United States v. Richardson*, 418 U.S. 166, 179-180 (1974)). Likewise, Texas "could enact a statute declaring that 'no [Texas] resident shall be required to pay Social Security taxes' and proceed to file a lawsuit challenging the Social Security Act." *Id.* at 271. Texas' standing theory would therefore open the floodgates to purely "symbolic" litigation between States and the United States, turning the federal courts into "convenient for[a] for policy debates." *Massachusetts*, 549 U.S. at 547 (Roberts, C.J., dissenting).

## II.     Plaintiffs' Claims Are Barred by the Tax Anti-Injunction Act

### A.     Plaintiffs' Challenge to the NFA's Integrated Taxing Scheme Is Barred by the Tax Anti-Injunction Act

**1.** The Tax Anti-Injunction Act provides that, with certain enumerated exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). That "broad and

mandatory language," *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 12 (2008), "could scarcely be more explicit" in precluding pre-payment suits, *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).

As this Court has explained, the Tax Anti-Injunction Act "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Hotze v. Burwell*, 784 F.3d 984, 996 (5th Cir. 2015) (quoting *NFIB v. Sebelius*, 567 U.S. 519, 543 (2012)). And although in many contexts a litigant might seek declaratory rather than injunctive relief in a pre-enforcement suit, the Declaratory Judgment Act does not authorize declaratory judgments "with respect to Federal taxes." 28 U.S.C. § 2201(a). Thus, Congress has enacted a bright-line scheme that broadly requires parties to "pay first and litigate later." *Flora v. United States*, 357 U.S. 63, 75 (1958) (quotation omitted). And "[i]n keeping with [these] protective purposes," this Court has "interpreted the Act broadly: it is applicable not only to the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well." *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (quotation omitted). Thus, for example, the statute prohibits "suit[s] to restrain" the "collection of information that would aid in the assessment of taxes." *Id.*

Instead of bringing a pre-enforcement challenge, the principal mechanism that a taxpayer can use to dispute the assessment of a tax is a refund suit. As explained above, in the NFA context, the maker of a firearm who wishes to challenge the

assessment of the NFA's tax against him may pay the tax and then file a claim for a refund or credit with the Attorney General. *See* 26 U.S.C. § 6511. If that claim is denied or six months elapse without a determination on the claim, the maker may bring suit in district court to recover the sum. *See id.* §§ 6532(a)(1), 7422. That refund-suit remedy "offer[s] [a taxpayer] a full, albeit delayed, opportunity to litigate the legality" of a disputed tax. *Bob Jones*, 416 U.S. at 746; *see also Hotze*, 784 F.3d at 996 ("[T]axes can ordinarily be challenged only after they are paid, by suing for a refund." (quotation omitted)).

**2.** Plaintiffs' claims in this suit are barred by the Tax Anti-Injunction Act because "the relief th[is] suit requests" is to restrain or obstruct the assessment and collection of the NFA's tax. *CIC Servs., LLC v. IRS*, 593 U.S. 209, 217 (2021).

As an initial matter, one of plaintiffs' claims is that the NFA's tax on making silencers is itself unconstitutional, and plaintiffs' complaint thus seeks "permanent injunctive relief enjoining [the government] from requiring Texans to pay a $200 tax on the making of firearm suppressors in Texas for non-commercial, personal use in Texas." ROA.349; *see also* ROA.345-46. That claim is plainly barred by the terms of the Tax Anti-Injunction Act.

In addition, plaintiffs' three other claims—which seek similar injunctive relief against the NFA's approval, registration, and serialization requirements, *see* ROA.344-49—are also barred by the Tax Anti-Injunction Act because those requirements all function as part of the NFA's integrated "taxing scheme." *United States v. Cox*, 906

24

F.3d 1170, 1179 (10th Cir. 2018). As this Court has repeatedly explained, the provisions surrounding the NFA's tax requirements—including, for example, the requirement that all NFA firearms "be registered" and the criminal prohibition on possessing unregistered firearms—are aimed at "facilitat[ing] enforcement" of the taxes themselves. *United States v. Gresham*, 118 F.3d 258, 261 (5th Cir. 1997). Thus, those provisions together reflect "the web of regulation aiding enforcement of" the tax provisions and are "a valid exercise of the taxing power." *Id.* at 262 (quotation omitted); *see, e.g.*, *Bezet*, 714 F. App'x at 342; *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972) (both similar); *cf. Sonzinsky v. United States*, 300 U.S. 506, 513 (1937) (upholding the NFA's registration requirement for firearms dealers as a valid exercise of the taxing power because that requirement is "obviously" "in aid of a revenue purpose").

Therefore, plaintiffs' claims challenging these facilitative requirements are barred by the Tax Anti-Injunction Act because the injunctions sought by those claims would "obstruct the collection of taxes." *Hotze*, 784 F.3d at 996 (quotation omitted). Indeed, an injunction prohibiting ATF from enforcing the NFA's application, registration, and serialization requirements is precisely the sort of injunction that this Court has long recognized is barred by the Act, because it would "restrain" the "collection of information that would aid in the assessment of taxes." *Linn*, 714 F.2d at 1282.

25

That conclusion is illustrated by the Supreme Court's recent analysis in *CIC*. There, the Court held that the Tax Anti-Injunction Act did not bar a suit challenging a "standalone reporting requirement, whose violation may result in both tax penalties and criminal punishment." 593 U.S. at 226. Although the suit would have, if successful, restrained the collection of the tax penalties for any violation of the requirement, the Court explained that the "reporting rule" and the tax were "several steps removed from each other." *Id.* at 220-21. And the Court further explained that because the tax in question constituted a penalty for violating the reporting requirement and the requirement was additionally backed by criminal sanctions, applying the Tax Anti-Injunction Act's prohibition would have meant that the party could not bring a challenge unless it first violated the reporting requirement and subjected itself to criminal punishment. *Id.* at 221-22.

Here, by contrast, the requirements surrounding the NFA's tax are critical parts of the integrated taxing scheme, rather than being "several steps removed" from the tax, because they allow ATF to collect the information necessary to assess the NFA's tax. In addition, and critically, no individual needs to subject himself to criminal punishment to challenge the making tax; instead, as explained, "the Anti-Injunction Act's familiar pay-now-sue-later procedure," *CIC*, 593 U.S. at 222, is available in this context. Plaintiffs may apply to make a silencer, pay the required tax, and then sue for a refund of that tax, at which time they can litigate the constitutionality of the entire integrated taxing scheme.

**B.    Plaintiffs Cannot Establish that Their Claims Should Nevertheless Proceed**

In district court, plaintiffs contended that the Tax Anti-Injunction Act should not bar their claims because, in plaintiffs' view, those claims are subject to an exception from the statute known as the *Enochs* exception. ROA.659-61; *see Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). Under this narrow exception, claims seeking to restrain the assessment of taxes may proceed only if two conditions are met. *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1321 (5th Cir.), *modified on other grounds*, 646 F.3d 223 (5th Cir. 1981). First, the plaintiff must demonstrate "irreparable injury and inadequacy of legal remedy." *Id.* Second, "it must be clear that under no circumstances could the government ultimately prevail," even "under the most liberal view of the law and the facts." *Id.* (quotation omitted). Plaintiffs' attempt to invoke this narrow exception fails on both counts.

**1.** Plaintiffs cannot demonstrate that requiring them to comply with the Tax Anti-Injunction Act's usual pay-first rule will cause them irreparable injury. As an initial matter, as plaintiffs did not dispute in district court, a taxpayer who is wrongly taxed is generally made "whole under the law of irreparable injury" so long as he may "sue for a refund and get his or her money back, with interest." ROA.660. And, as explained, just such a procedure is available to seek refunds of taxes paid under the NFA. Thus, each individual plaintiff may submit an application to make a silencer, pay the $200 tax, and then request a refund—first administratively and then, if that is

27

denied, through a lawsuit—after the application is approved and the tax is collected. *See supra* pp. 3-4. Or, if an individual plaintiff's application is denied, he may bring suit challenging that denial. Either way, that process provides an adequate remedy.

Nevertheless, plaintiffs contend that requiring them to follow that usual procedure will irreparably injure them for a variety of unpersuasive reasons. First, plaintiffs have suggested that following the process will require them to expend time applying to make a silencer and waiting for ATF to approve their application and that this "time lost . . . cannot be repaired" with damages. ROA.660-61. But that cannot constitute irreparable injury. Paying most taxes will require the taxpayer to expend some amount of time fulfilling the administrative requirements that occasion paying a tax and to wait some amount of time for the government to process the payment. But plaintiffs do not cite a single case in the *Enochs* context holding that such incidental "time lost" constitutes irreparable harm, nor could this Court accept that proposition without permitting the judicially crafted exception to swallow the statutory rule.

And although plaintiffs appear to suggest that processing delay constitutes irreparable injury in this context because plaintiffs are bringing Second Amendment claims, *see* ROA.660-61, that is incorrect. As an initial matter, plaintiffs are wrong to rest their theory of irreparable injury on their substantive merits claim. As explained, the purpose of the Tax Anti-Injunction Act is "to permit the United States to assess and collect taxes alleged to be due without judicial intervention," *Enochs*, 370 U.S. at 7,

28

and thus *Enochs* applies only "if it is clear that under no circumstances could the Government ultimately prevail," *id.* In this way, the *Enochs* framework avoids undermining Congress' decision that the ultimate determination of a taxpayer's claim should be deferred until after he has paid the tax. But plaintiffs' attempt to leverage their merits claim into a claim of irreparable injury would impermissibly secure a judicial determination on the merits of plaintiffs' claims on the front end—exactly what the Tax Anti-Injunction Act seeks to prevent. Regardless, here, plaintiffs cannot demonstrate that the government has no possibility of succeeding on plaintiffs' Second Amendment claim. *See infra* pp. 31-33.

Moreover, the current processing time for applications to make and register an NFA-regulated firearm is approximately 70 days. *See* ATF, *Current Processing Times*, https://perma.cc/98FA-AX5L (last updated Nov. 1, 2023). Thus, if plaintiffs had filed applications to make silencers rather than this lawsuit in February 2022, *see* ROA.3, they likely would have received an answer—and, assuming they are otherwise permitted to make the silencers they would have applied for, an approval—from ATF more than a year and a half ago. And generally speaking, those who wish to make an NFA-regulated firearm will often receive an answer on their application more quickly than a preliminary injunction—much less a final judgment—would be entered by a district court. Plaintiffs thus cannot complain that adhering to the usual process will unduly delay their ability to make a firearm.

Regardless, the mere "invocation" of a constitutional right "cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016). Rather, that showing may only be made where the impairment of a constitutional right inflicts an immediate and significant real-world injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). And indeed, the Supreme Court has made clear in the Tax Anti-Injunction Act context that "the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence." *United States v. American Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) (quotation omitted). Here, plaintiffs fail to demonstrate any such injury. The NFA requirements indisputably do not prevent plaintiffs from making and using silencers, and plaintiffs have identified no immediate and significant real-world injury that would occasion requiring them to comply with the NFA's procedures.

Next, plaintiffs argue that they are injured by the NFA's requirements to register and serialize the silencers that they make and that those injures "cannot be repaired in a tax refund action." ROA.661. But plaintiffs do not explain why that is so. Of course, in such an action, plaintiffs may seek a refund of the tax that they paid. And because the NFA's registration and serialization requirements are integrated parts of the taxing scheme, a favorable decision on the merits of plaintiffs' refund claim may also preclude enforcement of those requirements with respect to plaintiffs' silencers.

Finally, the Attorney General of Texas suggested in district court that Texas is irreparably harmed "by delays to or prohibitions on Texans' ability to use" silencers. ROA.661. As explained, those interests are entirely derivative of the interests of Texas' citizens in not being subject to the NFA and do not suffice to give the Attorney General standing to bring this suit. But even if they were sufficient to support standing, they could not support a finding of irreparable harm because Texas' citizens—like the individual plaintiffs here—have the legally adequate remedy of pursuing claims against the NFA through a refund suit.

**2.** Separately, plaintiffs could not demonstrate that "under no circumstances could the government ultimately prevail" on the merits of their Second Amendment claims, even "under the most liberal view of the law and the facts." *Kemlon Prods. & Dev. Co.*, 638 F.2d at 1321 (quotation omitted). Consistent with the general prohibition in the Tax Anti-Injunction Act on resolving the merits of such claims in a pre-enforcement suit—and with the district court's decision not to address the merits—this Court need not, and should not, definitively determine whether plaintiffs' claims have merit. It is instead sufficient to recognize that, under the most government-friendly view of the law, plaintiffs' claims could not survive the first merits hurdle because the silencers they wish to make are not arms protected by the Second Amendment.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be

infringed." U.S. Const. amend. II. The Second Amendment's protection extends only to "instruments that constitute bearable arms" and that are "typically possessed by law-abiding citizens for lawful purposes." *District of Columbia v. Heller*, 554 U.S. 570, 581-82, 625 (2008).

Because the Second Amendment covers only bearable arms, laws that regulate firearm accessories or attachments do not necessarily implicate its protections. And a "silencer is a firearm accessory; it's not a weapon in itself." *Cox*, 906 F.3d at 1186. Moreover, even if silencers were bearable arms, their inclusion within the NFA reflects Congress' determination that they have a "quasi-suspect character," *Staples v. United States*, 511 U.S. 600, 611-12 (1994), and can "be used readily and efficiently by criminals," H.R. Rep. No. 83-1337, at A395. As such dangerous and unusual weapons, they fall outside the scope of the Second Amendment's protection. *See Heller*, 554 U.S. at 581, 622-25.

Thus, every court to have considered the question has, to the best of the government's knowledge, held that silencers are not protected by the Second Amendment—either because they are not bearable arms, because they are dangerous and unusual weapons, or for both reasons. *See, e.g.*, *Cox*, 906 F.3d at 1186; *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009); *United States v. Stepp-Zafft*, 733 F. App'x 327, 329-30 (8th Cir. 2018) (per curiam) (plain error review); *United States v. Villalobos*, No. 3:19-cr-00040, 2023 WL 3044770, at *12 (D. Id. Apr. 21, 2023); *United States v. Saleem*, No. 3:21-cr-00086, 2023 WL 2334417, at *8-11 (W.D.N.C. Mar. 2,

2023); *United States v. Royce*, No. 1:22-CR-130, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *United States v. Al-Azhari*, No. 8:20-cr-206, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, No. 19-96, 2019 WL 4573424, at *4-5 (D. Md. Sept. 20, 2019). Conversely, plaintiffs failed in district court to identify even a single case, at any level of the judiciary, holding that silencers are protected by the Second Amendment. ROA.662-67; ROA.932-36. It is thus plain that under the most liberal view of the law—indeed, the only view endorsed by any court of which the government is aware—silencers are not protected by the Second Amendment and plaintiffs' claims cannot succeed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be

affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

LEIGHA SIMONTON
  *United States Attorney*

MICHAEL S. RAAB

  *s/ Sean R. Janda*
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

January 2024

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Sean R. Janda*
Sean R. Janda

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8309 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda

**ADDENDUM**

## TABLE OF CONTENTS

18 U.S.C. § 921(a)(25) ........................................................................................A1

26 U.S.C. § 5821 ..............................................................................................A1

26 U.S.C. § 5822 ..............................................................................................A1

26 U.S.C. § 5845(a), (i) ....................................................................................A2

26 U.S.C. § 5848 ..............................................................................................A2

26 U.S.C. § 7421(a) ..........................................................................................A3

**18 U.S.C. § 921(a)(25)**

**§ 921. Definitions**

**(a)** As used in this chapter—

. . .

**(25)** The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

**26 U.S.C. § 5821**

**§ 5821. Making tax**

**(a) Rate**

There shall be levied, collected, and paid upon the making of a firearm a tax at the rate of $200 for each firearm made.

**(b) By Whom Paid**

The tax imposed by subsection (a) of this section shall be paid by the person making the firearm.

**(c) Payment**

The tax imposed by subsection (a) of this section shall be payable by the stamp prescribed for payment by the Secretary.

**26 U.S.C. § 5822**

**§ 5821. Making**

No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the

application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

## 26 U.S.C. § 5845(a), (i)

### § 5845. Definitions

For the purpose of this chapter—

### (a) Firearm

The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

. . .

### (i) Make

The term "make", and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm.

## 26 U.S.C. § 5848

### § 5848. Restrictive use of information

### (a) General Rule

No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that

person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

**(b) Furnishing False Information**

Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information.


### 26 U.S.C. § 7421(a)

### § 7421. Prohibition of suits to restrain assessment or collection

### (a) Tax

Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.