No. 23-10802

# In the United States Court of Appeals for the Fifth Circuit

Ken Paxton, Attorney General, State of Texas; David Schnitz; Tracy Martin; Floice Allen,

*Plaintiffs-Appellants*,

*v.*

Steven Dettelbach, in his Official Capacity as Director, Bureau of Alcohol, Tobacco, Firearms and Explosives; Merrick Garland, U.S. Attorney General,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

**Counsel Listed on Inside Cover**

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Tony K. McDonald<br>Tony@tonymcdonald.com |
| Brent Webster<br>First Assistant Attorney General | The Law Offices of Tony McDonald<br>1501 Leander Dr., Suite B2<br>Leander, Texas 78641 |
| Grant Dorfman<br>Deputy First Assistant Attorney General | Tel.: (512) 200-3608<br>Fax: (815) 550-1292 |
| Ralph Molina<br>Deputy Attorney General<br>  for Legal Strategy | Warren V. Norred<br>warren@norredlaw.com |
| Charles K. Eldred<br>Chief, Legal Strategy Division<br>Charles.Eldred@oag.texas.gov | Norred Law, PLLC<br>515 E. Border Street<br>Arlington, Texas 76010<br>Tel.: (817) 704-3984<br>Fax: (817) 524-6686 |
| Johnathan Stone<br>Assistant Attorney General | Counsel for David Schnitz,<br>Tracy Martin, and Floice Allen |

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Ken Paxton,
in his official capacity as
Attorney General of Texas

TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii
Argument .................................................................................................................. 1
    I.   The Parties' Anti-Injunction Act Arguments are not Before the Court. ................................................................................................ 1
    II.  The Individual Appellants Have Injury in Fact Because They Cannot Be Expected to Comply With the Very Same NFA Requirements They Seek to Challenge. .................................................. 2
    III. Texas Also has Injury in Fact. .................................................................. 9
    IV. BATFE Does Not Dispute That If One Plaintiff Has Standing, Article III is Satisfied. ............................................................................ 11
Conclusion .............................................................................................................. 12
Certificate of Service ............................................................................................. 13
Certificate of Compliance ..................................................................................... 13

# Table of Authorities

**Cases**

*Bezet v. United States*,
  714 F.App'x 336 (5th Cir. 2017) .................................................................. 8

*Book People, Inc. v. Wong*, No. 23-50668,
  2024 WL 175946 (5th Cir. Jan. 17, 2024) ...................................................... 11

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ................................................................................. 10, 11

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ....................................................................................... 9

*Mississippi Democratic State Party v. Barbour*,
  529 F.3d 538 (5th Cir. 2008) ........................................................................ 7

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
  719 F.3d 338 (5th Cir. 2013) ........................................................................ 2

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) ....................................................................................... 8, 9

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ...................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...................................................................................... 3

*United States v. Rahimi*,
  61 F.4th 443 (5th Cir. 2023) ........................................................................ 8

*Westfall v. Miller*,
  77 F.3d 868 (5th Cir. 1996) .......................................................................... 8

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ........................................................................ 6

**Statutes**

26 U.S.C. § 6532(a) ........................................................................................... 5

26 U.S.C. § 7421 ............................................................................................... 1

# Argument

## I. The Parties' Anti-Injunction Act Arguments are not Before the Court.

Appellees ("BATFE") list the second issue presented as: "Whether plaintiffs' attempts to enjoin the NFA's taxation-and-registration scheme are barred by the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a)." Appellees' Br. at 2. But that issue is not before the Court. The parties extensively briefed this issue below. ROA.745–51 (Appellants' motion for summary judgment); 808–16 (Appellees' motion for summary judgment). Appellants noted that only one of their four claims (Count II, challenging the collection of the $200 tax, as opposed to Counts I, III, and IV, challenging the application, registration, and serialization requirements) implicated the Anti-Injunction Act, and that exceptions applied even to that claim. ROA.745–49.

However, the district court did not rule on the Tax Anti-Injunction Act or even acknowledge the issue in its order of dismissal (nor was it required to). ROA.1001–08. Instead, it decided only standing—and only the injury-in-fact prong. ROA.1003 ("[T]he Parties only contest whether Plaintiffs have suffered an injury in fact."); *see also* Appellees' Br. at 5–6 (acknowledging that the district court addressed only the individual plaintiffs' standing and the Texas Attorney General's standing).

The Court should not consider the parties' Anti-Injunction Act arguments. The district court should consider them on remand.

## II. The Individual Appellants Have Injury in Fact Because They Cannot Be Expected to Comply With the Very Same NFA Requirements They Seek to Challenge.

The individual Appellants argue that the four NFA requirements— the application, tax, registration, and serial number requirements—violate the Constitution as applied to citizens who make firearm suppressors for non-commercial, personal use in Texas—Counts I, II, III, and IV of their live pleading. ROA.344–48. The individual Appellants wish to make firearm suppressors for non-commercial, personal use in Texas *without* complying with those four requirements. But if they do so, they face up to ten years in prison and a fine of up to $250,000. As explained in Appellants' primary brief, the four requirements inflict injury in fact, and the individual Appellants are not required to violate the NFA to have injury in fact. Appellants' Br. at 17–23.

In response, BATFE complains the individual Appellants have not attempted to comply with NFA. But that's the whole point of the suit. BATFE first argues, "No individual plaintiff alleges that he has submitted an application to make an NFA-regulated silencer and, thus, no plaintiff claims to have already suffered an injury from the NFA's requirements." Appellees' Br. at 11. But if the application requirement is unconstitutional, then the individual Appellants are injured by the application requirement itself. Citizens cannot be required to apply for permission to exercise constitutional rights. And they are not required to comply with an unconstitutional application requirement—with criminal penalties for non-compliance—to have standing to challenge the constitutionality of that requirement. *See Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) ("When asking a federal court

2

to engage in pre-enforcement review of a criminal statute, a plaintiff need not violate the statute; he may meet this injury requirement by showing 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and … a credible threat of prosecution thereunder.'"). Appellees themselves acknowledge, "the injury-in-fact standard requires plaintiffs to allege an actual 'intention to engage in a course of conduct … proscribed by [the] statute.'" Appellees' Br. at 11 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation omitted)). The injury-in-fact standard does not require plaintiffs to actually violate the statute.

BATFE next argues that the individual Appellants have merely expressed a "vague desire" and only face a "possible future injury," a "speculative" injury, a "threatened injury," and an injury that is not "concrete" or "certainly impending." Appellees' Br. at 11. But the individual Appellants' desire to make firearm suppressors for non-commercial, personal use in Texas *without* complying with the NFA's four requirement are exactly concrete enough to challenge those requirements. Appellees do not (and cannot) deny that if the individual Appellants make a firearm suppressor without complying with those requirements, they violate the statute and face up to ten years in prison and a fine of up to $250,000.

BATFE tries to explain its position that the individual Appellants are not harmed by arguing that if they would just submit to "the NFA's taxation-and-registration scheme," they would not face prosecution:

> The underpinning of the pre-enforcement standing doctrine is that "it is not necessary" for a party to "expose himself to actual arrest or

3

prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). But, as explained, the NFA does not prohibit the underlying conduct—here, the making of silencers.

Appellees' Br. at 11-12. That argument is completely non-responsive to the individual Appellants' claim that "the NFA's taxation-and-registration scheme" is entirely unconstitutional as applied to their desire to make firearm suppressor for non-commercial, personal use in Texas. They want to do so *without* submitting to the NFA's requirements—the constitutionality of which they have standing to challenge.

And the NFA *does* "in fact prohibit the underlying conduct—here, the making of silencers" in cases where BATFE denies an application to make firearm suppressors. As BATFE acknowledges in its brief, "Once the application is filed and the tax is paid, ATF *may* approve the application." Appellees' Br. at 3 (emphasis added). *Sub silentio*, BATFE acknowledges that it may *not* approve the application. And there is no statutory method to challenge an application denial, and BATFE acknowledges (again *sub silentio*) when it writes:

> [A]n individual who has his application to make a firearm approved may then pursue a claim—first administratively and then in district court—for a refund of the making tax. See 26 U.S.C. §§ 6511, 7422. And an individual who has his application denied (or who has six months pass without a determination on his application) will then have exhausted his options to comply and may have standing to bring a suit challenging the requirements. Either way, the individual will be able to receive effective judicial review of his claims without ever having exposed himself to arrest or prosecution.

BATFE's sloppy language here may confuse the reader into thinking that BATFE's denial of an application has a remedy. The "application" in the first

4

sentence refers to the *application to make a firearm*. The "application" in the second sentence does not refer to the "application" in the first sentence, but instead refers to the "claim" in the first sentence, which is an *application for a refund of the $200 tax* one must pay before being allowed to make a firearm suppressor. *See* 26 U.S.C. § 6532(a) ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time…"). The third sentence's phase "[e]ither way" refers to whether or not the tax refund is granted, not to whether or not BATFE approves the application to make a firearm suppressor in the first place. This confirms that *there is no statutory procedure to challenge a denial of an application to make a firearm suppressor*. BATFE's claim that complying with "the NFA's taxation-and-registration scheme" will necessarily result in "effective judicial review of [an applicant's] claims" is false.

Moreover, in cases where the application is approved, "the NFA's taxation-and-registration scheme" inflicts injury in fact on the individual Appellants which allows for *pre-enforcement* review. *See* Appellants' Br. at 17–23. And BATFE ignores the fact that the individual Plaintiffs challenge the very act of applying for permission to make a firearm suppressor for non-commercial, personal use in Texas. Whether they can get a refund of the $200 tax they must pay as part of submitting to the application requirement is irrelevant to whether the application requirement inflicts injury in fact.

BATFE next argues, "'the decision to for[]go' taking steps under the statute to demonstrate a concrete intent to violate the statute could not 'be excused on the ground that' it would 'expose[] [plaintiffs] to possible prosecution.'" Appellees' Br. at 12 (citing *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). "Conversely, requiring individuals to take such concrete steps before bringing suit does not preclude effective review of the NFA's requirements." *Id.* BATFE thus attempts to compare the individual Appellants' claimed injuries to the injuries claimed in *Zimmerman*, which concerned a candidate's decision not to purchase a list of donors because of an allegedly unconstitutional statute that limited the total amount of contributions he could accept. The Court held that the candidate had not established standing to challenge the statute because buying a donor list did not violate the statute and could not expose the candidate to prosecution. Here, in contrast, the individual Plaintiffs cannot take any more steps towards violating the four challenged NFA requirements without actually violating the statute. They have not foregone steps towards violating the statute, but have instead forgone violating the statute. Therefore, they have standing to challenge it.

Similarly, BATFE later argues that the individual Appellants have "submitted no evidence demonstrating that they have procured any of the tools and unregulated components that they intend to use to make their silencers." Appellees' Br. at 14. This is irrelevant. BATFE cites no authority suggesting that the individual Appellants need to show more than their sworn declaration that they wish to make a firearm suppressor. They allege that they will "personally" make the firearm suppressor "in their home." ROA.711, 713, 715. BATFE has produced no evidence this

allegation is unrealistic—because it cannot. Firearm suppressors are not complicated devices, and the individual Appellants assert they have the skills necessary to make firearm suppressors in their homes.

BATFE relies on *Mississippi Democratic State Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) to argue that "standing is not created by a declaration in court pleadings." Appellees' Br. at 7, 14. But that is only the case when "[t]he record is bereft of evidence of [any] firm intention" to act in violation of the challenged statute and when the plaintiff "has taken no steps" to demonstrate that intention. *Id.* Here, the record is far from "bereft of evidence." Since Texas went through the steps to pass legislation in violation of the challenged statute, the individual Appellants have taken every step (besides complete exposure to prosecution) to show their firm intention to violate the challenged statute. They have taken such steps so as to know where they will make the firearm suppressors, with what components they will make the firearm suppressors, and from where those individual components may come. Thus, Appellees arguments that the individual Appellants and Texas have failed to show any evidence of a firm, realistic danger of undergoing the NFA's registration-and-taxation scheme lacks merit.

Next, BATFE argues that making the individual Appellants submit to the application process "may reveal additional information relevant to any challenge that a prospective plaintiff wishes to bring" and "may reveal additional information bearing on whether a particular plaintiff may properly challenge the NFA's requirements." Appellees' Br. at 12–13. For instance, BATFE argues, the applicant may be disqualified from possessing a firearm suppressor for reasons other than the NFA,

7

or possession of the firearm suppressor might be prohibited by state law, in which case the NFA is not harming the applicant. *Id*. BATFE cites no authority for this outlandish argument because there isn't any. The Appellants must meet their burden to establish standing, and they have. The way to find out if facts outside the pleadings demonstrate that an individual Plaintiff lacks standing is the discovery process, not an unconstitutional application process, but BATFE successfully argued against discovery in this case. ROA.595, 599–610, 612–620.

Finally, BATFE relies on *Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996) and *Bezet v. United States*, 714 F.App'x 336 (5th Cir. 2017), which hold:

> A plaintiff wishing to challenge certification laws must generally exhaust his certification options before suing in federal court [citing *Westfall* at 872]. Otherwise, his 'inaction' caused his own injury. *Id*. Bezet challenges the registration requirements of § 5812 [an NFA provision requiring an application-and-registration process for transferring NFA weapons similar to the application-and-registration process for making NFA weapons] yet has made no attempt to comply with them. Accordingly, 'his inaction has caused any injury he has suffered.'" *Id*.

*Bezet*, 714 Fed. Appx. at 340. But these cases are now obsolete. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) "clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering prior precedent obsolete." *United States v. Rahimi*, 61 F.4th 443, 450–51 (5th Cir. 2023) (cleaned up, citation omitted). *Bruen* requires courts to re-evaluate Second Amendment jurisprudence. *Id*. at 448. Post-*Bruen*, whether citizens may challenge requirements to apply for permission to exercise Second Amendment rights is an open question. Although BATFE cites these opinions as controlling authority from this Court, it saves this

8

argument for last—surely because it recognizes the shaky status of these opinions post-*Bruen*.

The Individual Plaintiffs have injury in fact.

### III. Texas Also has Injury in Fact.

Texas has standing to vindicate the injury in fact to its quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general and its sovereign interest in the power to create and enforce a legal code. Appellants' Br. at 23–26.

Responding to Texas's quasi-sovereign-interest argument, BATFE notes Supreme Court authority that Texas cannot sue the federal government to protect her citizens from the operation of federal statutes and does not have standing as *parens patriae* to bring an action against the federal government. Appellees' Br. at 17–18 (citing *Massachusetts v. EPA*, 549 U.S. 497, 520 n. 17 (2007) and *Alfred E. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982)). But the cited authority is incomplete.

The exception to the general rule that states lack *parens patriae* standing against the federal government is when "a parens patriae action could rest upon the articulation of a 'quasi-sovereign' interest." *Snapp*, 458 U.S. 592, 602; *Massachusetts v. E.P.A.*, 549 U.S. 520 n.17 (2007) ("The CHIEF JUSTICE claims that we overlook the fact that our cases cast significant doubt on a State's standing to assert a quasi-sovereign interest against the Federal Government. Not so.") (cleaned up, citations omitted)).

States may vindicate at least two quasi-sovereign interests against the federal government. "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Snapp*, 458 U.S. at 607. This case involves the first interest. The NFA's unconstitutional regulation of firearm suppressors, and BATFE's enforcement thereof, adversely affects Texans' health and well-being by delaying, for "approximately 70 days," Appellees' Br. at 29 (when the application is approved) or prohibiting (when the application is not approved) Texans' ability to use firearm suppressors for the purpose of home defense, as demonstrated by the affidavits of the Individual Plaintiffs. ROA.711–16. Firearm suppressors reduce shooters' hearing loss and reduce recoil, improving reaction time, weapon control, accuracy, and shot placement. ROA.130. Therefore, Texas has standing to vindicate its quasi-sovereign interests in its citizens' health and well-being against the NFA's requirements as applied to their making of firearm suppressors for non-commercial, personal use in Texas. Simply put, Texas wants to protect its citizens' hearing and to ensure its citizens are more effective in exercising their right to self-defense. The NFA stands as an obstacle to this goal.

*Haaland v. Brackeen*, 599 U.S. 255 (2023) is not to the contrary. *Haaland* did not involve either of the two quasi-sovereign interests that states have standing to vindicate against the federal government. Instead, Texas attempted to base its standing on the Equal Protection Clause, but the Court rejected the argument. "Texas also lacks standing to challenge the placement preferences. It has no equal protection

rights of its own and it cannot assert equal protection claims on behalf of its citizens because a State does not have standing as parens patriae to bring an action against the Federal Government." *Id.* at 294–95 (cleaned up, citation omitted).

Responding to Texas's sovereign-interest argument, BATFE argues that section 2.052 of the Texas Government Code does not implicate Texas's sovereign interest in the continued enforceability of its own statutes or enforcing a legal code because it "does no more than purport to exempt Texas residents from federal law." Appellees' Br. at 21. But that is not true. The statute only applies to firearm suppressors made for non-commercial, personal use in Texas. It does not simply purport to protect all Texans from the NFA or purport to block enforcement of the entire NFA in Texas. Texas has a policy in favor of firearm suppressors, memorialized in the statute. BATFE announced in an open letter that it believes the statute is preempted by federal law and that it will continue to enforce the NFA against Texans who make firearm suppressors for non-commercial, personal use in Texas. This is a clash of sovereigns. Texas has a sovereign interest in its statute.

## IV. BATFE Does Not Dispute That If One Plaintiff Has Standing, Article III is Satisfied.

This Court has recently reaffirmed that "the presence of any one plaintiff with standing to pursue injunctive relief ... satisfies Article III's case-or-controversy requirement." *Book People, Inc. v. Wong*, No. 23-50668, 2024 WL 175946, at *5 (5th Cir. Jan. 17, 2024). BATFE does not contest this holding. At least one party has injury-in-fact, and the district court did not consider the other two *Lujan* factors, so this Court should reverse the district court's holding that no party has standing.

## Conclusion

The Court should reverse the district court's ruling that Appellants lack injury-in-fact and should remand this case to that court for a ruling on the other two *Lujan* factors and the merits of Appellants' constitutional claims.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Grant Dorfman
Deputy First Assistant Attorney General

Ralph Molina
Deputy Attorney General
 for Legal Strategy

*/s/ Charles K. Eldred*
Charles K. Eldred
Chief, Legal Strategy Division
Charles.Eldred@oag.texas.gov

Johnathan Stone
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Ken Paxton,
in his official capacity as
Attorney General of Texas

*/s/ Tony K. McDonald*
Tony K. McDonald
Tony@tonymcdonald.com

The Law Offices of Tony McDonald
1501 Leander Dr., Suite B2
Leander, Texas 78641
Tel.: (512) 200-3608
Fax: (815) 550-1292

Warren V. Norred
warren@norrelaw.com

Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
Tel.: (817) 704-3984
Fax: (817) 524-6686

Counsel for David Schnitz,
Tracy Martin, and Floice Allen

## Certificate of Service

On January 23, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/ Charles K. Eldred*
Charles K. Eldred

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,045 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

*/s/ Charles K. Eldred*
Charles K. Eldred